# EXHIBIT 1

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GAIL EUGENE PHILLIPS–WATERS, Individually and as Personal Representative of the Estate of JAMES LEON WATERS, deceased | |
| **Plaintiff,** | CASE NO. 1:06–CV–01310 |
| **v.** | SECOND AMENDED COMPLAINT |
| MARRIOTT INTERNATIONAL, INC., | |
| Serve: Mr. David W. Goewey Venable LLP 575 7th Street, N.W. Washington, D.C.  20004–1601 | |
| And | |
| RENAISSANCE HOTEL OPERATING COMPANY | |
| Serve: Mr. David W. Goewey Venable LLP 575 7th Street, N.W. Washington, D.C.  20004–1601 | |
| **Defendants.** | |

## SECOND AMENDED COMPLAINT

(Wrongful Death, Survival, Negligence)

Plaintiff Gail Eugene Phillips–Waters (formerly also known as Gail Curry)

(hereinafter Gail Phillips–Waters), individually and in her capacity as personal

and legal representative of decedent James Leon Waters' estate and his heirs, states as follows and for her Complaint against Marriott International, Inc. and Renaissance Hotel Operating Company.

## PRELIMINARY STATEMENT

1.    Gail Phillips–Waters brings this action seeking compensatory and punitive damages for the injuries and losses suffered by her individually, and as the personal and legal representative of the estate of her deceased husband, James Leon Waters, and his heirs.  Gail Phillips–Waters has been designated the personal and legal representative of the estate of her deceased husband, James Leon Waters.

2.    This action arises out of the Defendants' gross, wanton, willful, reckless and/or negligent misconduct in connection with their failure to render timely and reasonable aid and protection, including but not limited to reasonable first aid until professional assistance arrived, to James L. Waters, one of their hotel guests who was experiencing a medical emergency.[1]  At or around 9:30 p.m. on July 26, 2005, James L. Waters, while a guest of Defendants' Renaissance Washington, D.C. Hotel ("Renaissance Hotel" or "the Hotel"), suffered a sudden cardiac arrhythmia from ventricular fibrillation.

3.    On information and belief, the Hotel did not have an Automated External Defibrillator ("AED") device on its premises at the time of Mr. Waters' sudden cardiac arrhythmia, and/or did not have staff on duty at the time properly trained in utilizing an AED.  The Hotel also failed to provide complete and/or adequate information to the District of Columbia's professional

---

[1]  Mr. and Mrs. Waters were registered at the Hotel and shared a room under the name of Gail Curry, Mrs. Waters' name prior to marrying Mr. Waters, and the name on the credit card she was using.

medical responders, and failed to ensure its security staff was equipped with working portable radios on the evening of July 26, 2005.  The Hotel's failure to have working radios and to otherwise communicate complete and/or adequate information to professional medical responders further prevented and delayed the arrival of emergency medical treatment to Mr. Waters, and increased the risk of harm to him.  These failures by Defendants, as more fully set forth below, caused the death of Plaintiff's decedent, James L. Waters.

## BACKGROUND

4.      Most cardiac arrests are caused by abnormal heart rhythms which are brought on by ventricular fibrillation. This abnormal rhythm occurs when the heart's electrical system malfunctions, causing a chaotic rhythm that prevents the heart from pumping oxygen-carrying blood to the victim's brain and body.

5.      An AED is a portable electronic device that automatically diagnoses and treats cardiac arrest by reestablishing an effective heart rhythm.  This treatment is called defibrillation, which applies an electric shock to the entire heart muscle, uniformly clearing the electrical activity of the heart, allowing it to resynchronize.  The patient can then be safely transported to a hospital for additional health care.  Without prompt access to an AED, the great majority of heart attack victims will die before a normal heart rhythm is restored.

6.      Given the life-saving efficacy of AEDs, and the relative inexpensiveness of the device and training to use it, by the year 2000 at least, AEDs were standard in corporate and governmental offices, shopping centers, airports, restaurants, sports stadiums, schools, universities, community centers, hotels and other places where large groups of people are invited to

3

gather, and the risk that someone among those invited will suffer a sudden cardiac arrest is quite likely.  Cummins Declaration, ¶ 12, attached hereto as Exhibit A.

7.    AEDs have been demonstrated to be safe and effective, even when used by lay individuals.  Moreover, in order to encourage the use of AEDs in the District of Columbia, the D.C. City Council passed legislation in the year 2000 which established that any person who uses an AED to provide emergency care or treatment, is immune from civil liability, D.C. Code  § 44–233 (2001).

8.    By failing to have an AED on the premises of the Hotel, and/or by failing to adequately train its staff in the use of an AED, the Defendants disregarded the applicable standard of care for the provision of emergency first aid and guest/invitee protection in places of public accommodation and assembly, to their guests who suffer a sudden cardiac arrest.  Exhibit A, Cummins Declaration, ¶17.  The Renaissance Hotel breached its duty to render timely and reasonable aid and protection to its guests, such as decedent James L. Waters.  *See e.g.* Restatement (Second) Torts, § 314A(1).

9.    In addition, the Renaissance Hotel failed to communicate complete and/or adequate information about Mr. Waters' condition to the professional medical responders, and failed to ensure their security staff had operational radios.  Thus, for example, when the EMTs from the D.C. Fire and Emergency Medical Services Branch personnel arrived, they were provided with inaccurate and incomplete information, which further delayed necessary emergency medical care, and further risked the life of Mr. Waters.

10.   The Renaissance Hotel breached its duty to properly train and equip its staff to respond to medical emergencies on its premises.  For

4

instance, but not by way of limitation, Renaissance Hotel employees should have been furnished with both operational radios and portable AEDs in order to provide immediate emergency aid to its guests, such as decedent, James L. Waters, and Hotel employees should have been adequately trained in the use of AEDs and in the maintenance and use of their portable radios.

11.    Mr. Waters was 58 years old when he died.  Had he received a timely, properly administered AED shock by Renaissance Hotel staff, he most likely would have survived.  Exhibit A, Cummins Declaration, ¶19.

## JURISDICTION

12.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.  Supplemental jurisdiction over Plaintiff's pendent state-law claims is conferred by 28 U.S.C. § 1367.

## VENUE

13.    Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the District of Columbia.

## THE PARTIES

14.    Plaintiff Gail Eugene Phillips-Waters resides at 8311 Renton Avenue South, Seattle, Washington 98118.  She is the duly appointed personal representative of the estate of her deceased husband, through the Superior Court of the State of Washington for King County, No. 06-4-04151 SEA (July 17, 2006).  She is bringing this action individually, and as the wife, personal representative, and legal representative of the estate of James Leon Waters.

15.    Upon information and belief, at relevant times herein, The Renaissance Washington, D.C. Hotel was owned, operated, controlled by,

5

and/or otherwise affiliated or associated with, Marriot International, Inc. ("Marriott") and/or Renaissance Hotel Operating Company ("RHOC").

16.    Defendant Marriott is a corporation whose headquarters are located in Washington, D.C. at 1 Marriott Drive, Washington, D.C.  20058. Marriott has public lodging properties located in the United States and 66 other countries and territories.

17.    On information and belief, "Renaissance Hotel" is one of Marriott's numerous public lodging brands, and Defendant RHOC is part of this brand and/or a subsidiary of Marriott.

## FACTUAL BACKGROUND

18.    On July 26, 2005, Mrs. Gail Phillips-Waters and her husband, James Leon Waters were staying at the Renaissance Hotel located at 999 9th Street, N.W., Washington, D.C.  They were staying in Washington in order to visit with family and friends.  The decedent, James L. Waters grew up in Washington, D.C.

19.    Around 9:30 p.m. on July 26, 2005, Mr. Waters suffered a sudden cardiac arrhythmia in the Waters' hotel room located on the 8th floor of the Hotel.

20.    Mrs. Phillips-Waters witnessed her husband's collapse and immediately started CPR and called the Hotel's front desk seeking emergency medical treatment.  A Hotel employee called "911."  A Hotel employee also came to the Waters' room, found Mr. Waters on the bed, and attempted to administer CPR until professional responders from the D.C. Fire and Emergency Services Branch arrived.  The Renaissance Hotel staff failed to deploy or administer an AED device to Mr. Waters.  On information and belief, the Hotel failed to have an AED on its premises, and/or failed to adequately

6

train its staff in the use of an AED.  Thus, Mr. Waters did not receive any treatment from hotel staff that would have cleared his cardiac arrhythmia and restarted his heart.

21.    Although Mr. Waters suffered cardiac defibrillation, he still had a shockable rhythm.  Therefore, had he had received a timely defibrillation shock from an AED, a normal heart rhythm could have been restored and he could have been safely transported to a hospital for further treatment.  Exhibit A, Cummins Declaration ¶ ¶s 10-11.  Without timely access to an AED, there was little anyone could do to restore Mr. Waters' normal heart rhythm later. By the time the professional responders arrived at his hotel room with an AED device, and he could be transported to George Washington University Hospital, too much time had elapsed and Mr. Waters could not be resuscitated.

22.    Moreover, on the evening of July 26, 2005, the Hotel's key security personnel (including the employee directed to Mr. Waters' hotel room, and the employee directed to wait for the EMS responders at the front of the Hotel) did not have operational two-way radios.  This resulted in the communication to the professional medical responders of incomplete and/or inaccurate information about Mr. Waters' condition, and thus further delayed the transmittal of timely professional medical treatment to Mr. Waters. *See e.g.,* Exhibit B, Freedom of Information Act documents received from the D.C. Fire and Emergency Services Branch pertaining to Incident No. 089340.

23.    The Renaissance Hotel, located in the heart of downtown Washington, D.C., has over 800 rooms, located on 16 floors.  Not simply a hotel, it has 64,000 square feet of meeting space, 30 meeting rooms, a 10,000 square foot swim and fitness center and restaurants.  On any given day or night, more than 1,500 guests and other individuals could be staying at

7

the Renaissance Hotel or using its meeting and other facilities.  Despite this fact, upon information and belief, at all times relevant to this action the Renaissance Hotel did not have a single AED in its fitness center, by the pool, or at any other place on the premises, and/or failed to adequately train its staff in the use of any AED.

24.    Coronary artery or other cardiovascular disease is the leading cause of death in the United States.  Sudden cardiac arrest due to ventricular fibrillation is the most frequent manner of death from coronary artery disease.  Exhibit A, Cummins Declaration, ¶ 14.  Even though Defendants knew, or should have known, that thousands of guests and business invitees are present in its hotel at any given time of day or night, Defendants on the night in question, failed to have one working AED available, and/or trained staff in the use of an AED, in order to provide effective first aid and protection to its guests.  That failure was contrary to medical and legal standards, and cost Mr. Waters his life.

25.    Since at least the year 2000, the national standard for emergency first aid and protection in places of public accommodation and assembly such as hotels, convention centers, airports, schools, has required that AEDs be accessible and available to the public, and that staff of such facilities be adequately trained in the use of AEDs.  Defendants' staff should have been properly equipped with and trained in the prompt use an AED for one of its guests or business invitees in cardiac arrest.  Renaissance Hotel management and/or staff breached this duty to provide an AED to Mr. Waters.   Exhibit A, Cummins Declaration, ¶ 12.

26.    It was reasonably foreseeable that given the large numbers of hotel guests and business invitees who stay or attend meetings at the

8

Renaissance Hotel, that one of them, such as Mr. Waters, would likely suffer a sudden cardiac arrest while on the Hotel's premises. It was, therefore, highly foreseeable that Defendants' failure to have an AED immediately accessible, and trained staff on duty, for such an emergency subjected individuals like Mr. Waters to an increased risk of death because there would be no timely way to restore normal cardiac rhythm.

CLAIMS AGAINST DEFENDANTS

COUNT I

(Wrongful Death)

27.    Paragraphs 1-26 are incorporated by reference as though fully set forth herein.

28.    This claim for wrongful death is brought by Plaintiff Gail Phillips-Waters as the personal representative of the decedent, James Leon Waters, pursuant to D.C. Code Ann. § 16-2702 (1989 Repl. Vol.), against all Defendants jointly and severally.

29.    Pursuant to its relationship with Mr. Waters, Defendants as owners and/or operators of the Renaissance Hotel had a duty to exercise reasonable care for the safety, protection, and first aid of Mr. Waters in the event he experienced a medical emergency. It is well-known that when someone has a heart attack, every minute counts. And every minute there is a delay, the risk of harm or death to the victim increases.

30.    Defendants knew, or should have known, that if one of their guests or business invitees, such as Mr. Waters, suffered a heart attack or cardiac arrhythmia on its premises, that without timely access to an AED, Defendants were affirmatively creating a dangerous condition, making it

9

reasonably foreseeable that its guests, such as Mr. Waters, would be severely injured or die before receiving professional emergency care.

31.    Defendants further knew, or should have known, that they did not have operational two-way radios available to its staff in the event of a medical emergency, thus increasing the likelihood that accurate and timely information would not be able to be transmitted to professional medical responders concerning a heart attack victim's status.  On July 26, 2005, this failure also increased the risk of harm to Mr. Waters, by delaying the arrival of professional emergency medical treatment.

32.    As a direct and proximate result of the above-described failure to provide adequate first-aid and protection to Mr. Waters, his cardiac arrhythmia was not properly and timely treated, and as a result, he could not be resuscitated.  He experienced severe emotional panic and mental distress prior to his death, as well as bodily pain and conscious suffering.  He also suffered pecuniary loss, including, but not limited to, hospital and medical expenses and loss of future earnings.

33.    Given the great likelihood that one or more of the thousands of hotel guests and business invitees at the Renaissance Hotel would suffer a sudden cardiac arrest, Defendants had an affirmative obligation to have available to their guests and invitees, AEDs and other timely and effective first-aid and protection.

34.    The failure of Defendants to have AEDs and/or adequately trained staff available did, in fact, increase the risk of death to Mr. Waters, and caused his death.

35.    As a proximate result of the Defendants' reckless, wrongful and/or negligent failure to have accessible AEDs and/or properly trained staff

present in its hotel, Plaintiff's decedent received substandard first-aid and protection from the Defendants and died from his cardiac arrhythmia as a result thereof.

36.    As a further failure to have accessible AEDs and/or properly trained staff present in the hotel, Plaintiff Gail Phillips-Waters was deprived of the services, care and companionship of her husband for the rest of her life, and also suffered economic damages including but not limited to lost wages, and funeral and burial expenses.

WHEREFORE, plaintiff Gail Phillips-Waters, as personal representative of the estate of James Leon Waters requests that the Court enter judgment in her favor and in favor of the estate of James Leon Waters and his heirs, and against all Defendants, jointly and severally, as follows:  (1) for compensatory damages of not less than one million dollars or such other amount as shall be proven at trial; (2) pre- and post-judgment interest; (3) costs; and (4) such other and further relief as this Court may deem just and proper.

## COUNT II

### (Survival Action)

Paragraphs 1-36 are incorporated by reference as though fully set forth herein.

37.    This survival action is brought by Gail Phillips-Waters, as the personal representative of the estate of James Leon Waters, pursuant to D.C. Code Ann.§ 12-101 (1995 Repl. Vol.), against all Defendants jointly and severally.

38.    As a proximate result of the aforesaid reckless, wrongful and/or negligent conduct by the Defendants, Mr. Waters' heart rhythm was never

restored, and he experienced pain, suffering, emotional distress and mental anguish prior to his death.

WHEREFORE, plaintiff Gail Phillips-Waters, as representative of the estate of James Leon Waters requests that the Court enter judgment in her favor and in favor of the estate of James Leon Waters and his heirs,  and against all defendants, jointly and severally, as follows:  (1) for compensatory damages in an amount not less than one million dollars or such other amount as shall be proven at trial; (2) pre- and post-judgment interest; (3) costs; and (4) such other and further relief as this Court may deem just and proper.

## COUNT III
### (Negligent Equipment, Training and Supervision)

Paragraphs 1-38 are incorporated by reference as though fully set forth herein.

39.    Upon information and belief, Defendants failed to provide adequate and competent equipment, training, and/or supervision to the employees and staff of the Renaissance Hotel in how to effectively provide emergent first-aid and protection to its guests and invitees who suffer a heart attack on the hotel's premises.  Such equipment, supervision and/or training, at a minimum, should have included reasonable equipment and procedures for using an AED and portable radios with regard to someone suffering a heart attack at the Hotel.

40.    As a direct and proximate result of the above-described negligence, plaintiffs' decedent, James Waters, suffered grave bodily injury causing his death.  He experienced severe emotional panic and mental distress prior to his death as well as bodily pain and conscious suffering.  He also suffered pecuniary loss, including, but not limited to loss of future earnings.

12

WHEREFORE, plaintiff Gail Phillips-Waters, as representative of the estate of James Leon Waters request that the Court enter judgment in her favor and in favor of the estate of James Leon Waters and his heirs, and against all defendants, jointly and severally, as follows: (1) for compensatory damages in an amount not less than one million dollars or such other amount as shall be proven at trial; (2) pre- and post-judgment interest; (3) costs; and (4) such other and further relief as this Court may deem just and proper.

## COUNT IV

### (Punitive Damages)

41.    Paragraphs 1-40 are incorporated by reference as though fully set forth herein.

42.    Defendants knew or should have known that of the thousands of guests and invitees who frequent the Renaissance Hotel, there was a high likelihood that one or more of them would suffer a heart attack or cardiac arrthymia and would need to be promptly defibrillated or they would likely die.

43.    Defendants' failure to have a AED at the Hotel was malicious, grossly negligent, wanton and reckless, and/or in willful disregard of the rights and safety of James Leon Waters.  Defendants knew or had reason to know that failing to equip the Renaissance Hotel with an AED and properly-trained staff in the use of an AED prevented and denied their guests and invitees with timely, effective and life sustaining first aid and protection, including timely treatment for a heart attack, with the greater likelihood that a person, such as Mr. Waters, would die.

44.    Defendants' failure to ensure its security and/or other personnel had working portable two-way radios also hampered and delayed the arrival of professional medical treatment to Mr. Waters, from the D.C. Fire and

13

Emergency Services Branch, prevented accurate information about Mr. Waters to be transmitted to the professional medical responders, and was likewise malicious, grossly negligent, wanton and reckless, and/or in willful disregard of the rights and safety of James Leon Waters. Defendants knew or had reason to know that failing to equip key security personnel at the Renaissance Hotel with working two-way radios would prevent and deny their guests and invitees with timely, effective and life sustaining first aid and protection, including timely treatment for a heart attack, with the greater likelihood that a person, such as Mr. Waters would die.

WHEREFORE, plaintiff Gail Phillips-Waters, as personal representative of the estate of James Leon Waters, requests that the Court enter judgment in her favor and in favor of the estate of James Leon Waters and his heirs, and against all defendants jointly and severally, for (1) punitive damages for the sum of several million dollars or such other amount as shall be proven at trial; (2) pre- and post-judgment interest; (3) costs; and (4) such other and further relief as this Court may deem just and proper.

JURY DEMAND

A trial by jury is hereby demanded.


Respectfully submitted,

SPARKS & SILBER, LLP



Richard F. Silber, Esquire, D.C. Bar No. 395407
3221 M Street, N.W.
Washington, D.C.  20007-3616
Tel 202/338-0687 Fax 202/333-0858


McNAUL EBEL NAWROT & HELGREN P.L.L.C.


Leslie Hagin, Esquire, D.C. Bar No. 453450
Michael D. Helgren, Esquire*
600 University Street, Suite 2700
Seattle, Washington 98101
Tel 206/467-1816 Fax 206/624-5128

Attorneys for Plaintiff,
Gail Phillips-Waters


*Admitted *Pro Hac Vice*

# Exhibit A

## DECLARATION OF RICHARD O. CUMMINS, M.D., M.P.H., M.Sc.

I, Richard O. Cummins, M.D., M.P.H., M.Sc., declare:

1.      I have personal knowledge of the facts set forth in this declaration and can testify competently thereto. I am over the age of eighteen (18) years and am otherwise competent to make this declaration.

2.      I am a professor of medicine at the University of Washington in Seattle, where I am the associate director of the Emergency Department. I have been on the faculty at the University of Washington Medical School since 1981. I am board certified in both Emergency Medicine and in Internal Medicine. I am responsible for teaching medical students and house staff the basic principles of emergency medicine. The University of Washington trains physicians to take their place in community emergency department and hospitals and therefore medical students and residents are trained to national community standards, rather than the standards of unique academic medical centers.

3.      I have done extensive research in cardiopulmonary emergencies. I have been actively involved in the evaluation of automatic external defibrillation ("AED") since the early 1980's, having published many papers on that topic. I am an originator of the "Chain of Survival" concept for out of hospital cardiac arrest – in particular, the link of early defibrillation. My research, teaching and writing have fostered the America Heart Association's campaigns to strengthen the Chain of Survival in every community, most recently through the concepts of the "principle of early defibrillation" and the concept of "public access defibrillation." With my colleagues, I was one of the first investigators to implement and evaluate the following: EMT-defibrillation, first-responder defibrillation,

DECLARATION OF RICHARD O. CUMMINS, M.D., M.P.H., M.Sc. – Page 1

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

home defibrillation, lay rescuer defibrillation, and automatic defibrillators used in commercial aircraft, hotels, and other public accommodation environments.

4.      Among other awards, in 2005, the American Heart Association and the International Liaison Committee on Resuscitation (ILCOR) named me as one of their five 2005 Honorees for Emergency Cardiovascular Care at the 2005 International Conference on Resuscitation and Emergency Cardiac Care in Dallas, Texas. These awards are bestowed once every five years. The honorees are selected for their landmark contributions, authorship of books, articles, and education and teaching materials, and development of innovative technological and scientific breakthroughs.

5.      I have been active in many aspects of resuscitation science, including evidence-based resuscitation research and international collaboration in developing common treatment recommendations. I have performed extensive scientific research published in respected peer-reviewed journals, on a wide variety of related topics, including the safety and effectiveness of automated external defibrillations (AEDs), the value of transcutaneous pacing in sudden cardiac arrest, the quality of long-term survival from sudden cardiac arrest, the value and effectiveness of training and equipping first responders and the lay public to perform CPR and automated external defibrillation, and the pharmacology of resuscitation from cardiac arrest.  I have been involved in multi-center effectiveness research regarding "Public Access Defibrillation," the placement of AEDs in the "public setting" for use by trained and non-trained responders.  I have also practiced clinical emergency medicine in hospital emergency departments and in pre-hospital settings.  I have personally observed and supervised pre-hospital emergency personnel in performing CPR, defibrillation and related care to patients in the pre-hospital setting.

DECLARATION OF RICHARD O. CUMMINS, M.D., M.P.H., M.Sc. – Page 2

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

6.    I was the national chairman of the AHA ACLS Subcommittee from 1992-1996; national chairman of the Emergency Cardiac Care Committee from 1996 to 1998, and Senior Science Editor of the American Heart Association's Emergency Cardiovascular Care Program from 1997 until the present. I have served as co-director of the Center for Evaluation of Emergency Medical Services, and I have served as the Medical Director for the Early Defibrillation Programs in the Seattle-King County EMS Division.

7.    I have published more than 150 scientific papers, books, textbook chapters, editorials, and other articles. I have served as the co-editor of the 1994 and 2000 International Guidelines 2000 for Cardiopulminary Resuscitation and Emergency Cardiovascular Care, and I was co-founder of the International Liaison Committee on Resuscitation (ILCOR). I have also been the co-editor of the American Heart Association's textbook of Advanced Cardiac Life-Support ("ACLS"), the 1996 and 1999 Handbook of Emergency Cardiac Care, and the Textbook of ACLS Scenarios (1997).

8.    I am licensed to practice medicine in the State of Washington, the State of Virginia and the United Kingdom. I am currently or have been a member of the following professional societies and organizations: Society for Academic Emergency Medicine; National Association of Emergency Medical Services Physicians, American College of Emergency Physicians, American Board of Internal Medicine, American College of Physicians, American Heart Association, American Medical Association, American Public Health Association, and the Society for American Medical Decision Making.

9.    I have been asked to express an opinion regarding whether the Renaissance Hotel provided proper standard "first aid" to James Waters after he collapsed from

DECLARATION OF RICHARD O. CUMMINS, M.D., M.P.H., M.Sc. – Page 3

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

ventricular fibrillation, one of the most common arrest rhythm causing Sudden Cardiac

Arrest, while he was a guest at the hotel in the District of Columbia on July 26, 2005.

10.    I have reviewed the GWU emergency records and autopsy report for James

Waters. I have also reviewed the EMS records for Mr. Waters. . I understand that Mr.

Waters' arrest was witnessed, and that bystanders provided cardio-pulmonary resuscitation

("CPR") within moments of his collapse. However, hotel personnel did not provide Mr.

Waters with the most critical link in the chain of survival—early rhythm assessment by an

AED, and a defibrillation shock from that AED if he had a shockable rhythm (which he did).

11.    Based on all that I have read and reviewed regarding Mr. Waters' collapse and

subsequent death, and based upon my education, experience, knowledge, and training as a

physician with extensive hospital and pre-hospital clinical experience, I think that the

security or other personnel of the Renaissance Hotel, were in positions that included a duty to

respond and provide first aid to hotel guests experiencing an emergency. These personnel did

not provide to James Waters, a level of first aid that met the national standards on July 26,

2005 when he suffered sudden cardiac arrest from ventricular fibrillation. As the responsible

providers of standard first aid to Mr. Waters, the Renaissance Hotel staff were required to

have been trained and properly equipped with an AED at the time they were notified that Mr.

Waters had suffered a medical emergency.

12.    As of July 2005, and for a number of prior years, the national standard for first

aid training for "first responders" or personnel with a duty to respond included training in

both CPR, and the skills to operate and use an AED. First aid and CPR training without AED

training is sub-standard, and in violation of the recommendations of multiple relevant

organizations. For example, commencing in 2000, the American Heart Association

DECLARATION OF RICHARD O. CUMMINS, M.D., M.P.H.,
M.Sc. – Page 4

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Guidelines formally stated that standard CPR training for emergency responders must include AED training. At the same time, the American Heart Association Guidelines strongly recommended the widespread placement of AEDs in significantly populous locations of public assembly. Since 2000 the national standard for emergency first aid in places of public accommodation and assembly – such as hotels, sports arenas, convention centers, airports, and the like – has required the first arriving emergency responders, with a duty to respond (in this case, members of the Hotel staff) be trained and equipped to perform CPR and to use an AED.

13.    The possibility that, over time, hotel guests, such as James Waters, would suffer a sudden cardiac arrest was highly likely and foreseeable. Hundreds and even thousands of people with varying physical conditions gather periodically at the Renaissance Hotel. Given the relatively high frequency with which Americans are stricken with sudden cardiac arrest, it is my opinion that "public innkeepers" such as the Renaissance Hotel have a duty and obligation to provide standard, emergency first aid to guests who suffer a sudden cardiac arrest. Fulfillment of this duty and obligation required properly trained and AED-equipped personnel able to deliver the essential treatment of electrical defibrillation to Mr. Waters within minutes of his collapse in his hotel room.

14.    Coronary artery/cardiovascular disease is the number one cause of death in the United States today, and sudden cardiac arrest due to ventricular fibrillation is the most frequent manner of death from coronary artery disease. According to his medical records, Mr. Waters' cause of death was cardiac arrest due to ventricular fibrillation ("VF-associated cardiac arrest"). AEDs were developed specifically to provide early shocks to the fatal rhythm of ventricular fibrillation. Early shocks are much more likely to be followed by a

DECLARATION OF RICHARD O. CUMMINS, M.D., M.P.H., M.Sc. – Page 5

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

life-sustaining cardiac rhythm. First aid responders, using an AED, can provide defibrillation many minutes sooner than either EMS responders can provide, or can be achieved by transporting the patient to an emergency department.

15.     Survival from VF-associated cardiac arrest is almost totally dependent on providing early defibrillation.  The critical importance of early defibrillation stimulated the movement to add AED training to all CPR training for people with a duty to respond to emergencies. Since standard first aid training had for decades incorporated CPR training as a critical component, it followed that standard first aid training would, after 2000, include AED training . During sudden cardiac arrest the initial minutes are the most critical to the restoration of life.  When a person suffers a witnessed VF cardiac arrest (as Mr. Waters did), and a bystander starts early CPR (as a hotel staff member did) then an AED shock delivered within five minutes is associated with survival rates of more than 70%. This high survival rate has been observed in multiple "public access defibrillation (PAD)" studies where access to an AED is made readily available. The sites for these studies have included common carrier and public assembly settings such as sports stadia, commercial airlines, hotels with casinos, and international airports.

16.     The Renaissance Hotel appears to have taken some steps in preparation for guests suffering sudden cardiac arrest on its property (e.g., by training staff in CPR). By their failure, however, to provide the responding hotel personnel with AED training, and adequate access to an AED device , the hotel risked the lives of any persons who might suffer a sudden cardiac arrest upon the Renaissance property in Washington, D.C. By July 2005, CPR and first aid training for people with a duty to respond to emergencies (such as staff at public

DECLARATION OF RICHARD O. CUMMINS, M.D., M.P.H., M.Sc. – Page 6

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

assembly/public accommodation facilities) had for years, included training in the use, and on-site availability of an AED.

17.    When Mr. Waters collapsed in SCA on July 26, 2005, the Renaissance Hotel in Washington D.C. did not have an AED on its premises; did not have trained personnel equipped to respond with and administer an AED on its premises; and did not provide AEDs for use by other first or lay responders (the "Chicago O'Hare model" of public access to AEDs). Therefore, the Renaissance Hotel failed to provide Mr. Waters with the recommended national standard for first aid at public assembly/public accommodation entities.

18.    In my opinion, the Renaissance Hotel was responsible for making available AEDs for use by its on-site security and other staff. If the hotel's staff had been able to meet their responsibility and responded to James Waters with an AED, they would have afforded Mr. Waters a more likely than not probability of successful resuscitation and long-term survival.

19.    Based on all that I have read and reviewed regarding Mr. Waters' collapse and subsequent death, and based upon my education, experience, knowledge, and training as a physician, including extensive clinical hospital and pre-hospital clinical experience, it is my opinion that had Mr. Waters received a timely, properly administered AED shock by hotel staff, he more likely than not would have survived.

DECLARATION OF RICHARD O. CUMMINS, M.D., M.P.H., M.Sc. – Page 7

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

I declare under penalty of perjury of the laws of the District of Columbia and the

State of Washington that the foregoing is true and correct and that I would testify thereto.

Executed this 11th day of July, 2006, at Seattle, Washington.

_____
Richard O. Cummins, M.D, M.P.H., M.Sc.

DECLARATION OF RICHARD O. CUMMINS, M.D., M.P.H.,
M.Sc. – Page 8

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

# Exhibit B

2nd Endorsement

Subject:  Incident Number 089340 at 999 9th Street NW

Page 2

July 30, 2005

████████████████████████

Because of the initial information received when they arrived, Firefighter's ██████ and ████ verbally released Engine Company 16, stating that they would handle this call by themselves.  Engine Company 16 subsequently contacted A/Battalion Chief ████████ the incident commander on the Box alarm assignment at 10th and L Streets NW, and notified him of their location and requested to be placed on that assignment.  This request was granted.

I then interviewed Robert Dawkins (loss Prevention Officer at the Renaissance Hotel.  He stated to me that he was on duty when this incident occurred and remembered that he was given incomplete information regarding the condition of the ██████████████ by the phone operators from within the hotel.   Seeking more clarification, he states that he instructed one security officer to go to the 8th floor to assess the situation and stationed Officer Lalka  outside to await the arrival of the ambulance.  Most importantly, he indicated that he was frustrated by the fact that "both of these officers had dead portable radios".  Therefore all information concerning the patient on the 8th floor had to be passed on face to face.

It is evident that Officer Lalka, who was posted outside of the hotel to await the ambulance, had information to relay to Ambulance 16.  It is a fact that he had a dead portable radio and because of this had no way of knowing that t███████████████████████ ████████████████████████  It was only after Engine Company 16 was released by Ambulance 16 that more information arrived in the lobby face to face that t██████ ████████████████████████

Therefore, I recommend that this incident be investigated further regarding the audio tapes and the AVL to validate the fore-mentioned statements.

*Lawrence J. Anderson*
Lawrence J. Anderson
A/ 6th BFC

2nd Endorsement

Subject: Incident Number 089340 at 999 9th Street NW

Page 1

July 30, 2005

████████████████████

On July 30, 2005, while acting as the 6th Battalion Fire Chief I was apprised of the incident that took place at 999 9th Street NW (the Renaissance Hotel) at approximately 2130 hours on July 26, 2005. All concerned members have been ordered to submit special reports regarding their actions on this incident. I have interviewed these members as well as security personnel at the Renaissance Hotel. The results of my investigation are as follows:

Engine Company 16 Platoon One and Ambulance 16, both in quarters at the time were dispatched on a Medical Local to 999 9th Street NW Room 852 for a priority 2/ Bravo patient. Notes from the Event Chronology indicate that there █████████████████████████████████████████████████████████

Engine Company 16 consisting of ████████████████████████████████████ ████████████████████████████████ temporarily detailed to the Training Academy for re-certification, therefore Engine Company 16 was not operating as a Paramedic Engine Company on this date. Ambulance 16 was staffed with ████████████████████████████

Both units were dispatched at approximately 2133 hours. Both units responded from quarters and both are listed as en-route at 2134 hours. ████████████ stated that while en-route to the Renaissance Hotel he encountered visible smoke in the area of 10th and L Streets NW. He ordered wagon driver ████████ to stop momentarily to investigate. He stated to me that his concern was that there are several occupied apartment buildings in this vicinity which he thought might have been the source of the smoke. He discovered that the source of the smoke was from a fire at the Pepco substation. He states that he notified Communications via Channel 12 and requested a Box Alarm assignment. He then continued to respond to 999 9th Street NW.

Ambulance 16 arrived on the scene ahead of Engine 16. Upon their arrival and before entering the building, Phillip Lalka, a member of the Renaissance Hotel Security Staff approached them and stated that ████████████████ As they gathered their equipment, Engine Company 16 arrived.