UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GAIL EUGENE PHILLIPS-WATERS, )<br>(Individually and as Personal Representative )<br>of the Estate of JAMES LEON WATERS, deceased), )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>MARRIOTT INTERNATIONAL, INC., <u>et al.</u>, )<br>)<br>**Defendants.** ) | Case No.   06-cv-01310 (GK) |

**MOTION TO DISMISS OF
DEFENDANTS MARRIOTT INTERNATIONAL, INC.
AND RENAISSANCE HOTEL OPERATING COMPANY
<u>AND MEMORANDUM IN SUPPORT THEREOF</u>**

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants Marriott International, Inc. ("Marriott") and Renaissance Hotel Operating Company[1] ("Renaissance") respectfully submit this memorandum in support of Defendants' Motion to Dismiss the Second Amended Complaint ("Complaint") filed by Gail Eugene Phillips-Waters, Individually and as Personal Representative of the Estate of James Leon Waters ("Plaintiff").

**I.   INTRODUCTION**

Plaintiff's fundamental contention is that her husband, James Waters, would not have died if an Automated External Defibrillator ("AED") had been available at the Renaissance Hotel on 9th Street, N.W. when he suffered a cardiac arrest in his eighth-floor hotel room.  On the evening of July 26, 2005, Mrs. Waters notified the Hotel operator that Mr. Waters was not well; Renaissance employees immediately called 911, hurried to Mr. and Mrs. Waters' room, and assessed his condition and then performed Cardiac Pulmonary Resuscitation ("CPR") until

---

[1]  Renaissance is a subsidiary of Marriott.  Marriott and Renaissance are the only Defendants named in the Second Amended Complaint.

District of Columbia Fire and Emergency Medical Services ("FEMS") personnel arrived and attended to Mr. Waters. Plaintiff claims that Defendants were negligent in failing to have (and use) an AED. Plaintiff further alleges that such negligence was the proximate cause of her husband's death.

Plaintiff's Complaint is fundamentally flawed. As a matter of law, Plaintiff cannot overcome the fact that <u>Defendants had no duty, by statute or at common law, to have an AED at the Renaissance Hotel</u>. Because there is no basis for this Court to depart from the laws enacted by the D.C. City Council concerning AEDs or from the well-reasoned decisions of courts that have examined this very issue, Plaintiff's Complaint should be dismissed.

## II.     FACTUAL BACKGROUND

This action arises out of the death of Plaintiff's husband, James Leon Waters, who suffered a cardiac arrest on July 26, 2005, while he was a guest at the Renaissance Hotel ("the Renaissance" or "the Hotel") in Washington, DC. (Compl. ¶ 2.) When Plaintiff called the front desk to inform the Hotel that her husband was ill, Hotel employees immediately responded by calling 911 and dispatching Renaissance personnel to the Waters' eighth-floor hotel room. (Compl. ¶ 20.) Upon arrival and assessment of Mr. Waters, Renaissance personnel began to render first aid, including performing CPR on Mr. Waters. (Compl. ¶¶ 20-21; <u>see</u> Exh. A to Compl. (Cummins Decl. ¶¶ 10, 15).) When FEMS personnel arrived, Hotel staff waiting in front of the Renaissance immediately directed them to the Waters' room. The FEMS responders took over from Renaissance personnel and attended to Mr. Waters by, among other things, using a defibrillator, and then transporting him by ambulance to George Washington University

Hospital.[2]  (Compl. ¶ 21.)  Unfortunately, despite the efforts of the Hotel staff, the FEMS responders, and other healthcare/emergency room personnel, Mr. Waters could not be resuscitated and was pronounced dead at the hospital.

Plaintiff now alleges that negligence on the part of Defendants Marriott and Renaissance caused Mr. Waters' death.  Plaintiff contends that the Hotel should have been equipped with an AED -- a portable electronic device that can, in some circumstances, be used to "shock" a person's heart and "reestablish[] an effective heart rhythm" -- and that the Renaissance staff should have been trained on how to use the AED.  (Compl. ¶¶ 3, 5.)  According to Plaintiff, if the Hotel had been equipped with an AED and it had been used on Mr. Waters, "he most likely would have survived."  (Compl. ¶ 11, citing Exh. A, Cummins Decl. ¶ 19.)  Based on these allegations, Plaintiff seeks to bring claims against the Defendants for alleged wrongful death, together with a survival action, and claims for alleged negligence associated with Hotel equipment and training and supervision.  Plaintiff seeks compensatory damages of "not less than one million dollars" and punitive damages of "several million dollars."

---

[2]  As reflected in an attachment to Plaintiff's own Complaint (Exh. B), there were significant issues with respect to how D.C. Fire and Emergency Services personnel responded to this emergency.  When it has suited her interests, Plaintiff (through counsel) has claimed:

> Mr. Waters died as a result of the failures, and utter indifference, of the District's administrators, officers and Fire Department personnel -- which are part of a pattern and practice of deliberate indifference to the well-known risks and failings by the District . . . relative to training, supervision, and other aspects of the District's Fire Department/Emergency Medical Services (EMS) response system. . . .
>
> * * *
>
> Ms. Waters alleges that the District of Columbia . . . wrongfully caused the death of her husband . . .

(1/18/06 Letter of Plaintiff's counsel to Mayor Anthony Williams.)  It is likely that Plaintiff is pursuing this action instead of an action against the District of Columbia because "the District is generally immune from tort liability for actions taken by its officers in the course of providing public services."  Joy v. Bell Helicopter Textron, 999 F.2d 549, 561-62 (D.C. Cir. 1993) (citing Hines v. District of Columbia, 580 A2d 133, 136 (D.C. 1990)).

#783640/DC2
14562-235530

-3-

## III. ARGUMENT

### A. Legal Standard for a Motion to Dismiss.

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim in the Complaint. Accordingly, "the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff." Gilmore v. Palestinian Interim Self-Government Auth., 422 F. Supp. 2d 96, 98 (D.D.C. 2006) (citing Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979)). Nonetheless, where, as here, it "is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," a motion to dismiss should be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Because Defendants did not have a duty to have an AED at the Hotel at the time of Mr. Waters' death, Plaintiff's Complaint should be dismissed.

### B. Marriott Had No Duty to Provide an AED.

To prevail in this action, Plaintiff must establish that Defendants owed Mr. Waters a duty of care, that Defendants breached that duty, and Defendants' breach proximately caused damages to Plaintiff. Novak v. Capital Management & Development Corp., 452 F.3d 902, 907 (D.C. Cir. 2006). Here, the threshold question that must be addressed is whether Defendants had a duty to have an AED in the Renaissance Hotel at the time of Mr. Waters' death in July 2005. Atcovitz v. Gulph Mills Tennis Club, Inc., 812 A.2d 1218, 1222 (Pa. 2002) (characterizing question of whether health club had duty to provide an AED as "the threshold element"). Because there was (and is) no such statutory or common law duty, Plaintiff cannot state a claim for negligence against Defendants Renaissance and Marriott.

### 1.     No Statute Required the Hotel to Have an AED.

The deployment and use of AEDs is <u>highly</u> regulated.  The District, <u>all</u> fifty states, <u>and</u> Congress have all enacted legislation governing the use of AEDs.  <u>See</u> *State Laws on Heart Attacks, Cardiac Arrests & Defibrillators,* NATIONAL CONFERENCE OF STATE LEGISLATURES, available at <u>www.ncsl.org/programs/health/aed.htm</u> (updated Sept. 2006).  Some laws set standards for who may use AEDs and require that any AED program be administered and supervised by a licensed physician.  <u>See</u>, <u>e.g.</u>, Code of Ala. § 6-5-332.3 (2006); Fla. Stat. § 401.2915 (2006); Cal. Health & Safety Code § 1797.190 (2006); N.J. Stat. § 2A:62A-25 (2006); K.R.S. § 311.667 (2006); Miss. Code Ann. § 41-60-33 (2006).  Some states provide a "Good Samaritan" exemption from liability for people who use AEDs.  <u>See</u>, <u>e.g.</u>, Alaska Stat. § 09.65.087 (2006); Conn. Gen. Stat. § 52-557b (2006); Burns Ind. Code § 34-30-12-1 (2006); ALM GL ch. 112, § 12V (2006); O.R.C. Ann. § 2305.235 (2006).  Some of these laws even go so far as to require that AEDs must be made available in certain buildings.  <u>See</u>, <u>e.g.</u>, A.R.S. § 34-401 (2006) and Cal. Gov. Code § 8455 (2006) (mandating AEDs in some state buildings); Nev. Rev. Stat. Ann. § 4508.600 (2006) (mandating AEDs in airports); 8 NYCRR § 136.4 (2006) and C.R.S. 22-1-125 (2006) (mandating AEDs in certain public schools).  ***None*** of these laws, however, require hotels to have AEDs.

Most important for this Court's consideration is the fact that the District of Columbia has enacted legislation regulating the use of AEDs, but the District has never required that <u>any</u> entity -- including hotels -- have AEDs on premises.  D.C. Code § 44-231 (2006), <u>et</u> <u>seq</u>.  Instead, the District's statute provides for immunity from tort liability for a person who uses an AED and the person or entity responsible for the site where the AED is located, as long as the person using the AED "acts as an ordinary, reasonably prudent person would have acted under the same or similar

circumstances." D.C. Code § 44-233(a)-(b) (2006). The D.C. statute also requires that any entity that acquires an AED must ensure that (a) expected users of the AED receive training in CPR and in AED use; (b) the defibrillator is maintained and tested in accordance with the manufacturer's guidelines; (c) a licensed physician oversees all aspects of the defibrillation program; and (d) the program is registered with the D.C Fire and Emergency Medical Services Department. D.C. Code § 44-232 (2006).

Clearly, had the D.C. Council wanted to require hotels to have AEDs, it could have done so when it enacted D.C. Code § 44-232. It did not. More recently, the D.C. Council could have required D.C. hotels to have AEDs when, in January 2005, a bill was introduced that would have required D.C. buildings that accommodate more than 1,000 persons to have an AED on site. (See B16-0043, "Installation of Automated External Defibrillators Amendment Act of 2005" (introduced Jan. 18, 2005)). Although the D.C. Council considered this proposed legislation, it did not enact it into law. There simply is no basis for this federal court, sitting in diversity, to find that the Defendants had an obligation in July 2005 to have an AED in the Hotel when the D.C. Council had imposed no such obligation. See Atcovitz, supra, 812 A.2d at 1224, n.8.; see also Wadley v. Aspillaga, 163 F. Supp. 2d 1, 6 (D.D.C. 2001) (refusing to impose liability on social hosts for injuries caused by intoxicated guests in the absence of legislation imposing such a duty, and stating, "If the District of Columbia wishes to impose liability on social hosts, the City Council or Congress may enact a law imposing this type of liability. However, absent any legislative guidance, social hosts in the District of Columbia are not liable for injuries caused by intoxicated guests"); Cook v. Babbitt, 819 F. Supp. 1, 12 (D.D.C. 1993)("[c]ourts do not sit as super legislatures to judge the wisdom of policy. The constitutional framework gives the elected branches wide latitude to formulate policy, and necessarily tolerates even improvident exercises

of that discretion"); <u>Gay Rights Coalition Of Georgetown University Law Center v. Georgetown University</u>, 536 A.2d 1, 41 (D.C. App. 1987) (refusing to act as "super-legislature" to second-guess D.C. Council's enactment of Human Rights Act and its implications for groups' attempt to gain university recognition); <u>accord</u> <u>Carbonell v. Acrish</u>, 154 F. Supp. 2d 552, 562 (S.D.N.Y. 2001) (quoting <u>Heller v. Doe</u>, 590 U.S. 312, 319 (1993) and <u>New Orleans v. Dukes</u>, 427 U.S. 297, 303 (1976)) ("[t]he Supreme Court has counseled that the judiciary should not act as a 'super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines'").

It is this reasoning that led the Supreme Court of Pennsylvania to affirm the grant of summary judgment in favor of a health club on the very issue now before this Court:

> [O]ur analysis turns upon . . . the overall public interest in the proposed solution. The Legislature's enactments and the ensuing regulations reveal that acquisition, maintenance, and use of an AED, along with AED training requirements, are highly regulated. <u>Where our lawmakers have so thoroughly considered the statewide application and implications of a subject, this Court must refrain from imposing additional requirements upon that legislation.</u>

<u>Atcovitz</u>, <u>supra</u>, 812 A.2d at 1223 (emphasis added).[3]  Just as the <u>Atcovitz</u> court rejected the plaintiff's suggestion that the court should impose AED requirements on health clubs in Pennsylvania, so should this Court, sitting in diversity, reject Plaintiff's invitation to impose AED requirements on hotels in the District.[4]  <u>Wadley v. Int'l Telcoms. Satellite Org.</u>, 82 Fed.Appx. 227, 228 (D.C. Cir. 2003) ("'federal courts, sitting in diversity, are obligated to apply, not to amend, existing state law'") (quoting <u>Tidler v. Eli Lilly & Co.</u>, 851 F.2d 418, 426 (D.C.

---

[3] In reaching its decision, the Supreme Court of Pennsylvania also relied upon the "*doctrine of expessio unius est exclusio alterius*, the inclusion of a specific matter in a statute implies the exclusion of other matters." <u>Id.</u> (citations omitted). This doctrine equally applies to this case. <u>See</u> D.C. Code § 44-232 (2006).

[4] Similarly, the fact that the D.C. statute provides an exclusion from liability for one who uses an AED does not create the duty to provide an AED. <u>See</u> <u>Atcovitz</u>, 812 A.2d at 1224 ("[s]imply, the existence of a civil immunity provision for Good Samaritans who use an AED in an emergency situation cannot impose a duty on a business establishment to acquire, maintain, and use such a device on its premises").

Cir. 1988)); accord Burris Chem., Inc. v. USX Corp., 10 F.3d 243, 247 (4th Cir. 1999) ("The federal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion.").[5]

### 2. The Common Law Did Not Require the Hotel to Have an AED.

#### a. No Courts Have Found A Hotel or Other Business Entity Has A Duty to Have AEDs.

Although no District of Columbia court has addressed the issue, courts in other jurisdictions that have addressed the duty of an establishment to acquire and maintain AEDs have consistently held that there is no such duty. See, e.g., Salte v. YMCA of Metro. Chi. Found., 814 N.E.2d 610 at 615 (Ill. App. Ct. 2004) (affirming grant of motion to dismiss because health club did not have a duty to provide an AED); Atcovitz, 812 A.2d at 1220 (affirming summary judgment because tennis club did not have duty to acquire and maintain an AED); see also Rutnik v. Colonie Ctr. Court Club, Inc., 249 A.D.2d 873, 875 (N.Y. App. Div. 1998) (commenting "it is uncontroverted that the entire staff at the Court Club was trained in CPR, that emergency 911 was called shortly after decedent collapsed, and that a rescue squad arrived at the facility within five minutes. Plaintiffs' contention that defendants were negligent in failing to have a defibrillator present during the [racquetball] tournament for immediate use lacks merit.") (citation omitted). Such decisions are not surprising, particularly in light of the widespread

---

[5] That the equipping of hotels, stadiums, office buildings, and the like with AEDs is -- and should remain -- a matter for the D.C. Council and/or Congress to address is made evident by Plaintiff's own Complaint. Plaintiff alleges that the Hotel "has over 800 rooms, located on 16 floors . . . it has 64,000 square feet of meeting space, 30 meeting rooms, a 10,000 square foot swim and fitness center, and restaurants." (Compl. ¶ 23.) In some allegations, Plaintiff suggests a single AED at the Renaissance would have sufficed; in other allegations, Plaintiff suggests multiple AEDs should have been deployed throughout the Hotel as of July 2005. (Compare Compl. ¶¶ 3, 8, 20, 24, and 26 with Compl. ¶¶ 10, 33-36.) Indeed, within the space of a single paragraph of Dr. Cummins' declaration, he switches between suggesting a single AED would have sufficed to opining that multiple AEDs should have been on the Hotel premises. (See Cummins Decl. ¶ 17.) Assessment of such matters as the deployment of AEDs, including the number and location, as well as the use, training, maintenance, and related supervision, are all matters for the legislature, not *ad hoc* determination by the trial bar and judiciary. At least to this point, neither the D.C. Council nor the U.S. Congress (nor any state legislature or any court) has seen fit to require innkeepers to have AEDs. This Court should not do so now.

regulation -- at the local, state, and federal level -- governing the use of AEDs.  Atcovitz, 812 A.2d at 1223.[6]

As explained in these cases, innkeepers, businesses, and other entities with a "special relationship" have a duty to "take reasonable action" to protect guests "against unreasonable risk of physical harm" and to give them "reasonable first aid" until they can be cared for by others. Restatement (Second) Torts § 314A quoted in Pacello v. Wyndham Int'l, Inc., 2006 Conn. Super. LEXIS 1042, at *6-8 (Conn. Super. Ct. Apr. 7, 2006).[7]  Although the phrase "first aid" is not defined in the Restatement, it is clear that the term does not require a hotel to provide all medical care it could "reasonably foresee might be needed by a patron."  Salte v. YMCA, 814 N.E.2d at 615; see also Pacello, 2006 Conn. Super. LEXIS 1042, at *14-15; Atcovitz, 812 A.2d at 1220. Instead, "first aid requires no more assistance than that which can be provided by an untrained person."  Pacello, 2006 Conn. Super. LEXIS 1042, at *17-19.  In fact, the December 2005 American Red Cross and American Heart Association Guidelines for First Aid, upon which at least one court has relied in determining the scope of a hotel's duty, defines first aid "as assessments and interventions that can be performed by a bystander (or by the victim) *with minimal or no medical equipment.*"  See Guidelines, at IV-196, *available at* http://www.redcross.org/static/file_cont4913_lang0_1727.pdf (cited in Pacello, 2006 Conn. Super. LEXIS 1042, at *17-18) (emphasis added).[8]  Thus, as the Salte court held as a matter of law, a hotel is not under a duty to provide an AED, because "[t]he use of a defibrillator requires specific training and its use is far beyond the type of 'first aid' contemplated by a business

---

[6] The following comment by the Supreme Court of Pennsylvania bears repeating here:  "Even if the AED Good Samaritan Act imposed a duty upon [defendant tennis club] to carry an AED, it would not control this case.  The Legislature did not adopt it until two years after [plaintiff] sustained his injuries." Id. at 1224, n.8.

[7] Plaintiff expressly "alleges" in the Complaint that the governing standard is set forth in § 314A(1) of the Restatement.  (Compl. ¶ 8.)

[8] Nowhere in the Guidelines' discussion of types of "first aid" is the use of an AED even mentioned.  Id.

owner's duty to give aid to a business invitee." Salte, 814 N.E.2d at 610; see also Pacello, 2006 Conn. Super. LEXIS 1042, at *9-10 (the "standard of care required by the duty (of an innkeeper to an injured or ill guest) requires only that the defendant engage in minimal affirmative action," and this duty may be satisfied merely by "call[ing] for help and mov[ing] the patron to a place where assistance [can] be provided").[9]  Thus, Defendants had no duty to have an AED at the Renaissance Hotel on July 26, 2005.

### b. Dr. Cummins' Declaration Changes Nothing.

In an apparent attempt to circumvent this body of law, Plaintiff attempts to support her Complaint with the Declaration of Richard O. Cummins, M.D.  (Compl., Exh. A.)  Dr. Cummins -- a physician with no referenced education, training, or experience in or knowledge of first aid care within the relevant hospitality industry -- boldly opines that the Renaissance Hotel "was responsible for making available AEDs for use by its on-site security and other staff," and "failed to provide Mr. Waters with the recommended national standard for first aid at public assembly/public accommodation entities."  (Cummins Decl. ¶ 17.)  Dr. Cummins further opines that "[s]ince at least the year 2000, the national standard for emergency first aid and protection in places of public accommodation and assembly such as hotels, convention centers, airports, [sic] schools, has required that AEDs be accessible and available to the public, and that staff of such facilities be adequately trained in the use of AEDs." (Compl. ¶ 25 (citing Cummins Decl. ¶ 12).)  These sweeping contentions by Dr. Cummins (contentions not supported by his referenced education, training, and experience) do not save Plaintiff's Complaint for several reasons.

---

[9] Accord Rutnik, supra, 249 A.D.2d at 875  ("[I]t is uncontroverted that the entire staff at . . .[the] Club was trained in CPR, that emergency 911 was called shortly after decedent collapsed and that a rescue squad arrived at the facility within five minutes.  Plaintiffs' contention that defendants were negligent in failing to have a defibrillator present during the tournament [in which decedent collapsed] for immediate use lacks merit").

First, much of Dr. Cummins' declaration should be disregarded outright because he impermissibly attempts to state an opinion outside the scope of his area of possible expertise -- that is, he attempts to state an opinion as to the duty of care a hotel owes to its guests -- which is far beyond the scope of his expertise as a physician.[10]  Steele v. D.C. Tiger Mkt., 854 A.2d 175, 181-82 (D.C. App. 2004) (quoting Christiansen v. City of Tulsa, 332 F.3d 1270, 1283 (10th Cir. 2003) ("'an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts'"); Brannan v. Northwest Permanente, P.C., 2006 U.S. Dist. LEXIS 68886, at *11-12 (W.D. Wash. Sept. 25, 2006) (excluding testimony of psychiatrist "as to his speculation as to cause of death" because such testimony was beyond his area of expertise).

Second, Dr. Cummins' "opinion" is completely undermined by the holdings of various courts that have reached the direct opposite conclusion -- since 2000 -- and decided that the provision and use of AEDs falls outside of the duty to provide "first aid" incumbent upon hotels and other businesses.  See, e.g., Salte, 814 N.E.2d at 615; Atcovitz, 812 A.2d at 1220.  Indeed, no court in this or any other jurisdiction has held, and no legislature has enacted legislation requiring, that hotels must provide AEDs.  Dr. Cummins' "opinion," therefore, does not compel a different result in this case.[11]  Absent a duty on Defendants' part to have an AED available, Plaintiff's claims fail as a matter of law and the Complaint should be dismissed.

---

[10] This argument attacks the competence of the opinion as a matter of law.  As a matter of fact, Defendants do not concede that Dr. Cummins should be qualified as an expert and reserve all rights and arguments in the event the motion to dismiss is denied and Plaintiff seeks to have Dr. Cummins so qualified.

[11] Moreover, even studies conducted by Dr. Cummins himself indicate that Plaintiff would be hard-pressed to establish that the availability of an AED would have made Mr. Waters' survival "more likely than not."  For example, although Dr. Cummins asserts in his declaration that "an AED shock delivered within five minutes is associated with survival rates of more than 70%" (Cummins Decl. ¶ 15), in a professional article Dr. Cummins' co-authored, he (and his fellow authors) found that, even among cardiac arrest victims with a high likelihood of survival, the average survival rate was only 50% for cardiac arrest victims treated with CPR and defibrillation and other advanced care within roughly three minutes of collapse.  See 22:11 *Annals of Emergency Medicine* at 1656 (1993).  This Court need not decide such proximate causation issues, however, because it can rule as a matter of law that Defendant had no duty to have an AED at the Hotel.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

                                                Respectfully submitted,

                                                _[signature]_

                                                David W. Goewey (D.C. Bar No. 414257)
                                                Danielle R. Foley  (D.C. Bar No. 464482)
                                                VENABLE  LLP
                                                575 7th Street, N.W.
                                                Washington, D.C.  20004
                                                Telephone:  (202) 344-4583
                                                Facsimile:   (202) 344-8300

                                                *Counsel for Defendants*
                                                *Marriott International, Inc. and*
                                                *Renaissance Hotel Operating Company*

Date:   November 16, 2006

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of November 2006, a true and complete copy of the foregoing *Motion to Dismiss of Defendants Marriott International, Inc. and Renaissance Hotel Operating Company and Memorandum In Support Thereof, and proposed Order* was served by the Court's ECF filing system on the following:

> Richard F. Silber, Esquire
> SPARKS & SILBER, LLP
> 3221 M Street, N.W.
> Washington, D.C.  20007
> ***Counsel for Plaintiff***

> Leslie J. Hagin, Esquire
> Michael D. Helgren, Esquire
> MCNAUL EBEL NAWROT & HELGREN, PLLC
> 600 University Street
> Suite 2700
> Seattle, WA  98101
> ***Counsel for Plaintiff***

_____
Teresa E. Huguley