--- N.E.2d ----                                                    **Page   1**
--- N.E.2d ----, 222 Ill.2d 422, 2006 WL 1703488 (Ill.)
**(Cite as: --- N.E.2d ----)**

н

Briefs and Other Related Documents
**Marshall** v. **Burger King** Corp.Ill.,2006.
Supreme Court of Illinois.
Detroy MARSHALL, Jr., as Personal
Representative and Adm'r of the Estate of Detroy
Marshall III, Deceased, Appellee,
v.
BURGER KING CORPORATION et al.,
Appellants.
No. 100372.

June 22, 2006.

Background: Estate of restaurant patron brought
negligence action against fast food restaurant
franchise, restaurant owner, driver of vehicle, and
others after vehicle crashed through wall of
restaurant and struck patron, inflicting fatal injuries.
The Circuit Court, Winnebago County, Ronald L.
Pirrello, J., dismissed action against restaurant
franchise and restaurant owner with prejudice.
Estate appealed. The Appellate Court, 355
Ill.App.3d 685, 291 Ill.Dec. 805, 824 N.E.2d 661,
reversed and remanded. Restaurant franchise and
restaurant owner appealed.

Holdings: The Supreme Court, Garman, J., held
that:

(1) restaurant owed duty to aid or protect customers
against unreasonable risk of physical harm posed by
negligent acts of third persons, overruling *Stutz v.
Kamm,* 204 Ill.App.3d 898, 149 Ill.Dec. 935, 562
N.E.2d 399, and

(2) imposition of a duty of care to protect against the
negligent conduct of a third person does not require
notice of a prior, similar incident of negligent third-
party conduct, abrogating *Cobb v. Martin IGA &
Frozen Food Center, Inc.,* 337 Ill.App.3d 306, 271
Ill.Dec. 748, 785 N.E.2d 942.

Appellate court judgment affirmed.

McMorrow, J., dissented and filed opinion in which
Freeman, J., joined.

[1] Pretrial Procedure 307A ⊗➾ 622

307A Pretrial Procedure

307AIII Dismissal
307AIII(B) Involuntary Dismissal
307AIII(B)4 Pleading, Defects In, in
General
307Ak622 k. Insufficiency in General.
Most Cited Cases
Motion to dismiss on the pleadings challenges the
legal sufficiency of a complaint based on defects
apparent on its face. S.H.A. 735 ILCS 5/2-615.

[2] Appeal and Error 30 ⊗➾ 893(1)

30 Appeal and Error
30XVI Review
30XVI(F) Trial De Novo
30k892 Trial De Novo
30k893 Cases Triable in Appellate
Court
30k893(1) k. In General. Most
Cited Cases
Appellate court reviews de novo an order granting
or denying a motion to dismiss on the pleadings.
S.H.A. 735 ILCS 5/2-615.

[3] Pretrial Procedure 307A ⊗➾ 679

307A Pretrial Procedure
307AIII Dismissal
307AIII(B) Involuntary Dismissal
307AIII(B)6 Proceedings and Effect
307Ak679 k. Construction of
Pleadings. Most Cited Cases

Pretrial Procedure 307A ⊗➾ 687

307A Pretrial Procedure
307AIII Dismissal
307AIII(B) Involuntary Dismissal
307AIII(B)6 Proceedings and Effect
307Ak686 Matters Deemed Admitted
307Ak687 k. Well-Pleaded Facts.
Most Cited Cases
In reviewing the sufficiency of a complaint to
withstand a motion to dismiss on the pleadings,
court accepts as true all well-pleaded facts and all
reasonable inferences that may be drawn from those
facts. S.H.A. 735 ILCS 5/2-615.

[4] Pretrial Procedure 307A ⊗➾ 679

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT L**

--- N.E.2d ----
**(Cite as: --- N.E.2d ----)**

307A Pretrial Procedure
   307AIII Dismissal
      307AIII(B) Involuntary Dismissal
         307AIII(B)6 Proceedings and Effect
           307Ak679    k.    Construction    of
Pleadings. Most Cited Cases
On motion to dismiss on the pleadings, courts
construe the allegations in the complaint in the light
most favorable to the plaintiff. S.H.A. 735 ILCS 5/
2-615.

[5] Pretrial Procedure 307A  ⬅⟹  624

307A Pretrial Procedure
   307AIII Dismissal
      307AIII(B) Involuntary Dismissal
         307AIII(B)4 Pleading, Defects In, in
General
           307Ak623 Clear and Certain Nature
of Insufficiency
           307Ak624 k. Availability of Relief
Under Any State of Facts Provable. Most Cited
Cases
Cause of action should not be dismissed on the
pleadings unless it is clearly apparent that no set of
facts can be proved that would entitle the plaintiff to
recovery. S.H.A. 735 ILCS 5/2-615.

[6] Pleading 302  ⬅⟹  8(1)

302 Pleading
   302I Form and Allegations in General
      302k8 Matters of Fact or Conclusions
         302k8(1) k. In General. Most Cited Cases

Pleading 302  ⬅⟹  11

302 Pleading
   302I Form and Allegations in General
      302k11 k. Matters of Evidence. Most Cited
Cases

Pleading 302  ⬅⟹  48

302 Pleading
   302II Declaration, Complaint, Petition, or
Statement
      302k48 k. Statement of Cause of Action in
General. Most Cited Cases
While the plaintiff is not required to set forth
evidence in the complaint, the plaintiff must allege
facts sufficient to bring a claim within a legally

recognized cause of action, not simply conclusions.
S.H.A. 735 ILCS 5/2-615.

[7] Negligence 272  ⬅⟹  202

272 Negligence
   272I In General
      272k202 k. Elements in General. Most Cited
Cases
To state a cause of action for negligence, a
complaint must allege facts that establish the
existence of a duty of care owed by the defendant to
the plaintiff, a breach of that duty, and an injury
proximately caused by that breach.

[8] Negligence 272  ⬅⟹  1692

272 Negligence
   272XVIII Actions
      272XVIII(D) Questions for Jury and Directed
Verdicts
         272k1692 k. Duty as Question of Fact or
Law Generally. Most Cited Cases
Whether a duty exists in a particular case is a
question of law for the court to decide.

[9] Negligence 272  ⬅⟹  1693

272 Negligence
   272XVIII Actions
      272XVIII(D) Questions for Jury and Directed
Verdicts
         272k1693 k. Negligence as Question of
Fact or Law Generally. Most Cited Cases

Negligence 272  ⬅⟹  1713

272 Negligence
   272XVIII Actions
      272XVIII(D) Questions for Jury and Directed
Verdicts
         272k1712 Proximate Cause
           272k1713 k. In General. Most Cited
Cases
Whether a defendant breached a duty and whether
the breach was the proximate cause of the plaintiff's
injuries are factual matters for the jury to decide,
provided there is a genuine issue of material fact
regarding those issues.

[10] Appeal and Error 30  ⬅⟹  1082(1)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

30 Appeal and Error
  30XVI Review
    30XVI(L) Decisions of Intermediate Courts
      30k1081 Questions Considered
        30k1082 Scope of Inquiry in General
          30k1082(1) k. In General. Most
Cited Cases
Where the appellate court reverses the judgment of
the circuit court, and the appellee in that court
brings the case before the supreme court as an
appellant, that party may raise any issues properly
presented by the record to sustain the judgment of
the circuit court.

[11] Appeal and Error 30 ☞ 173(13)

30 Appeal and Error
  30V Presentation and Reservation in Lower
Court of Grounds of Review
    30V(A) Issues and Questions in Lower Court
      30k173 Grounds of Defense or
Opposition
        30k173(13) k. Actions for Personal
Injuries. Most Cited Cases

 Appeal and Error 30 ☞ 1082(2)

30 Appeal and Error
  30XVI Review
    30XVI(L) Decisions of Intermediate Courts
      30k1081 Questions Considered
        30k1082 Scope of Inquiry in General
          30k1082(2) k. Considering
Questions Not Raised or Passed Upon in
Intermediate Court. Most Cited Cases
Defendant restaurant, appealing to the Supreme
Court from decision of the Appellate Court that
reversed trial court's grant of motion to dismiss
action on the pleadings in negligence action brought
by estate of patron who was killed when a vehicle
crashed through wall of restaurant, forfeited
argument regarding proximate cause, where issue of
proximate cause was raised for the first time before
the Supreme Court, restaurant prevailed in trial
court on the basis that they owed no duty of care to
patron, restaurant did not argue proximate cause in
their motion to dismiss, and the trial court's ruling
was limited to the issue of whether estate adequately
pleaded the existence of a duty.

[12] Negligence 272 ☞ 1202(2)

272 Negligence
  272XVII Premises Liability
    272XVII(G) Liabilities Relating to
Construction, Demolition and Repair
      272k1202 Defects in Buildings and
Structures in General
        272k1202(2) k. Design Defects. Most
Cited Cases

 Negligence 272 ☞ 1202(3)

272 Negligence
  272XVII Premises Liability
    272XVII(G) Liabilities Relating to
Construction, Demolition and Repair
      272k1202 Defects in Buildings and
Structures in General
        272k1202(3) k. Construction Defects.
Most Cited Cases
Neither a cause of action for negligent design nor a
cause of action for negligent construction of a
building is dependent upon an injured party's status
as a business invitee, as may be the case with a
cause of action for negligence against the owner or
operator of a business.

[13] Negligence 272 ☞ 211

272 Negligence
  272II Necessity and Existence of Duty
    272k211 k. Public Policy Concerns. Most
Cited Cases
Determining whether a duty should be imposed
involves considerations of public policy.

[14] Negligence 272 ☞ 214

272 Negligence
  272II Necessity and Existence of Duty
    272k214 k. Relationship Between Parties.
Most Cited Cases
Touchstone of duty analysis in negligence action is
to ask whether a plaintiff and a defendant stood in
such a relationship to one another that the law
imposed upon the defendant an obligation of
reasonable conduct for the benefit of the plaintiff.

[15] Negligence 272 ☞ 1076

272 Negligence
  272XVII Premises Liability
    272XVII(C) Standard of Care

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
**(Cite as: --- N.E.2d ----)**

272k1075 Care Required of Store and Business Proprietors
272k1076 k. In General. Most Cited Cases

Special relationship between a business invitor and invitee gives rise to an affirmative duty on the part of invitors to aid or protect invitees against unreasonable risk of physical harm; overruling *Stutz v. Kamm,* 204 Ill.App.3d 898, 149 Ill.Dec. 935, 562 N.E.2d 399. Restatement (Second) of Torts §§ 314A, 344.

[16] Negligence 272 ⬤ 1076

272 Negligence
272XVII Premises Liability
272XVII(C) Standard of Care
272k1075 Care Required of Store and Business Proprietors
272k1076 k. In General. Most Cited Cases

Fast food restaurant, an establishment open to the general public for business purposes, was in a special invitor-invitee relationship with its customers, giving rise to duty to aid or protect customers against unreasonable risk of physical harm. Restatement (Second) of Torts §§ 314A, 344.

[17] Negligence 272 ⬤ 1078

272 Negligence
272XVII Premises Liability
272XVII(C) Standard of Care
272k1075 Care Required of Store and Business Proprietors
272k1078 k. Protection Against Acts of Third Persons. Most Cited Cases

Duty of care that arises from the business invitor-invitee relationship encompasses protecting invitee from negligent act of a third person. Restatement (Second) of Torts §§ 314A, 344.

[18] Negligence 272 ⬤ 213

272 Negligence
272II Necessity and Existence of Duty
272k213 k. Foreseeability. Most Cited Cases

What is required to be foreseeable is the general character of the event or harm, not its precise nature or manner of occurrence.

[19] Negligence 272 ⬤ 1078

272 Negligence
272XVII Premises Liability
272XVII(C) Standard of Care
272k1075 Care Required of Store and Business Proprietors
272k1078 k. Protection Against Acts of Third Persons. Most Cited Cases

Even if a business invitor's lack of knowledge of prior, similar incidents of negligent conduct should limit duty of care to protect invitees against unreasonable risk of physical harm posed by third persons, allegations raised in negligence complaint filed against fast food restaurant by estate of patron, who was killed when a vehicle crashed through wall of restaurant while patron was eating, were sufficient to support determination that restaurant owed a duty to take reasonable care to protect patron from the danger of out-of-control automobiles entering restaurant; restaurant was located in high traffic area, "brick half wall," and sidewalk rendered restaurant building susceptible to penetration by out-of-control automobiles, no precautions were taken to prevent automobile from entering restaurant. Restatement (Second) of Torts § 344.

[20] Negligence 272 ⬤ 1019

272 Negligence
272XVII Premises Liability
272XVII(B) Necessity and Existence of Duty
272k1019 k. Protection Against Acts of Third Persons in General. Most Cited Cases

Imposition of a duty of care on a possessor of land to protect an individual from the negligent conduct of a third person does not require notice of a prior, similar incident of negligent third-party conduct; abrogating *Cobb v. Martin IGA & Frozen Food Center,* Inc., 337 Ill.App.3d 306, 271 Ill.Dec. 748, 785 N.E.2d 942. Restatement (Second) of Torts § 344.

Justice GARMAN delivered the judgment of the court, with opinion:

Plaintiff, Detroy **Marshall**, Jr., as personal representative and administrator of the estate of his son, Detroy **Marshall** III, filed a negligence action in the circuit court of Winnebago County against **Burger King** Corporation, Davekiz, Inc., Pamela Fritz, and various insurers. The decedent was killed when a car driven by Fritz crashed through the wall of the Burger King restaurant where the decedent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
(Cite as: --- N.E.2d ----)

was eating and fatally injured him. Plaintiff alleged that Burger King and Davekiz, Burger King's franchisee, did not exercise due care in designing, constructing, and maintaining the restaurant and that their failure to do so proximately caused the decedent's death. Burger King and Davekiz filed a joint motion to dismiss the allegations against them (735 ILCS 5/2-615 (West 2002)), which the circuit court granted. The appellate court reversed and remanded the cause for further proceedings. 355 Ill.App.3d 685, 291 Ill.Dec. 805, 824 N.E.2d 661. We affirm the judgment of the appellate court and hold that the allegations in plaintiff's complaint are sufficient to establish that Burger King and Davekiz owed a duty of care to the decedent.

## BACKGROUND

According to plaintiff's complaint, on September 27, 2001, Pamela Fritz backed into a lamppost as she was attempting to drive out of the parking lot of a Burger King restaurant in Rockford, Illinois. When she drove forward from the lamppost, her accelerator stuck, and she lost control of her car. The car hit a sidewalk adjacent to the restaurant, became airborne, and penetrated the brick half-wall and windows surrounding the restaurant's entrance. The decedent, who was eating inside the restaurant at the time, was struck by Fritz's car and fatally injured.

On September 24, 2003, plaintiff filed the instant lawsuit in the Winnebago County circuit court as a personal representative of the decedent and as the administrator of the decedent's estate. Counts V and VI of plaintiff's six-count complaint, which sought damages for spoliation of evidence from various insurers and Fritz, were settled. Only the remaining counts are at issue in this appeal.

Counts I through IV of the complaint seek damages for negligence from Burger King and Davekiz on behalf of the decedent's children and next of kin under the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2000)) and the survival provision of the Probate Act of 1975 (755 ILCS 5/27-6 (West 2000)). All of these counts allege that Burger King franchised the restaurant at the Rockford location to Davekiz. Counts I and II allege that Burger King "owned, operated, controlled[,] and maintained" the restaurant "by and through its agents, servants, employees, [and] franchisees." They also allege that,

by and through the same parties, Burger King "directed and controlled the [restaurant's] design, construction, layout, floor plan[,] and building material specifications." Counts III and IV contain nearly identical allegations against Davekiz, with the exception that they omit the reference to "franchisees." All of the counts allege that Burger King and Davekiz did not exercise due care in designing, constructing, and maintaining the restaurant and that their failure to do so proximately caused the decedent's injuries. Specifically, they state that defendants:

"a. Failed to place vertical concrete pillars or poles in the sidewalk by the entrance of said restaurant, which vertical pillars or poles would have prevented the vehicle * * * from becoming air born [sic] and coming to rest over the brick half wall, when the Defendant[s] knew or should have known that failing to put concrete pillars or poles in the sidewalk by the entrance to the restaurant would allow a vehicle to become air born [sic] when driven over the sidewalk, thereby causing the vehicle to come down on top of the brick half wall * * *.

b. Improperly designed the Burger King restaurant building, by designing the building to be bricked up only a few feet from the ground, when the Defendants [s] knew or should have known[ ] that permitting [the] building to be bricked up only a few feet from the ground may allow a vehicle from the parking lot to drive into the building, and crash through the glass on top of the brick * * *.

c. Improperly constructed the building and sidewalk of the Burger King restaurant involved in this occurrence, by failing to place vertical concrete pillars or poles near the entrance of said restaurant, contrary to the custom and practice of the industry, when the Defendant[s] knew or should have known that the custom and practice in the building industry was to place vertical concrete pillars or poles near the entrance to the building when the parking lot is in such close proximity, and vehicles could drive up onto the sidewalk and into the building * * *.

d. Failed to adequately and securely construct the entrance and front of the Burger King restaurant involved in this occurrence, when the Defendant[s] knew or should have known that the location of this occurrence involved a high traffic count on two major streets, and that vehicles may drive onto the sidewalk and into the building * * *.

e. Improperly designed and constructed the sidewalk area of the Burger King restaurant involved in this occurrence, in violation of the BOCA Building

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
(Cite as: --- N.E.2d ----)

Code, by designing and constructing a sidewalk which sidewalk when hit by a vehicle causes the vehicle to become air born [sic] and crash into the restaurant building * * *.
f. Failed to otherwise use due care in the design, construction, and maintenance of the building, parking lot and sidewalk involved in this occurrence."

On November 10, 2003, Burger King and Davekiz filed a motion to dismiss counts I through IV of the complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2002)). They argued that plaintiff failed to state a cause of action upon which relief could be granted because they had no duty to protect the decedent from the injury caused by Fritz's car. The circuit court granted defendants' motion. The court reasoned that the likelihood of the type of accident at issue was so minor that to guard against it in the manner suggested by plaintiff "would require fortifying every building within striking distance of any crazed or incredibly inept driver," forgoing "any hope of aesthetically pleasing or business-enticing buildings."

The appellate court reversed the judgment of the circuit court and remanded the cause for further proceedings, with one justice dissenting. 355 Ill.App.3d 685, 291 Ill.Dec. 805, 824 N.E.2d 661. The majority held that plaintiff's complaint states a cause of action against defendants. 355 Ill.App.3d at 689, 291 Ill.Dec. 805, 824 N.E.2d 661. It noted that the complaint alleges specific ways in which defendants failed to guard against the possibility of cars penetrating the restaurant and injuring patrons. 355 Ill.App.3d at 689, 291 Ill.Dec. 805, 824 N.E.2d 661. Relying on two factually analogous cases, Ray v. Cock Robin, Inc., 57 Ill.2d 19, 310 N.E.2d 9 (1974), and Marquardt v. Cernocky, 18 Ill.App.2d 135, 151 N.E.2d 109 (1958), the majority concluded that, based on the allegations in plaintiff's complaint, it could not say as a matter of law that the precautions suggested by the complaint are beyond the duty of reasonable care that a premises owner in defendants' situation owes to its customers. 355 Ill.App.3d at 689, 291 Ill.Dec. 805, 824 N.E.2d 661. The majority also responded to the circuit court's "policy reasons" for declining to find that defendants owed a duty of reasonable care to the decedent. 355 Ill.App.3d at 689, 291 Ill.Dec. 805, 824 N.E.2d 661. According to the majority,

plaintiff created a question of fact as to whether defendants' failure to take precautions was a breach of their duty of reasonable care, regardless of the burdens associated with exercising that duty, by alleging that defendants' conduct was inconsistent with the custom and practice of the building industry and that it violated the BOCA building code. 355 Ill.App.3d at 689-90, 291 Ill.Dec. 805, 824 N.E.2d 661. The majority declined to follow Simmons v. Aldi-Brenner Co., 162 Ill.App.3d 238, 113 Ill.Dec. 594, 515 N.E.2d 403 (1987), and Stutz v. Kamm, 204 Ill.App.3d 898, 149 Ill.Dec. 935, 562 N.E.2d 399 (1990), both of which found no duty to exist in circumstances similar to those at issue in this case. 355 Ill.App.3d at 690-92, 291 Ill.Dec. 805, 824 N.E.2d 661.

The dissent opined that plaintiff failed to allege facts sufficient to establish a duty or proximate cause. 355 Ill.App.3d at 693, 291 Ill.Dec. 805, 824 N.E.2d 661 (McLaren, J., dissenting). As to the latter, the dissent reasoned that because defendants merely furnished a condition that caused injury as a result of the subsequent, independent act of a third party, the creation of that condition could not be a proximate cause of the injury. 355 Ill.App.3d at 694, 291 Ill.Dec. 805, 824 N.E.2d 661 (McLaren, J., dissenting). Instead, the subsequent, independent act of Fritz's driving broke the causal link between the original wrong and the injury and became the sole proximate cause. 355 Ill.App.3d at 694, 291 Ill.Dec. 805, 824 N.E.2d 661 (McLaren, J., dissenting). As to the issue of duty, the dissent criticized the majority for declining to follow Simmons and Stutz and for accepting plaintiff's "blind assertion" that defendants violated the BOCA building code absent specific citations to relevant code sections adopted by the City of Rockford. 355 Ill.App.3d at 694-95, 291 Ill.Dec. 805, 824 N.E.2d 661 (McLaren, J., dissenting).

Defendants filed a petition for leave to appeal, which we allowed. 177 Ill.2d R. 315. We granted leave to the Illinois Association of Defense Trial Counsel, the Pacific Legal Foundation, and the Illinois Trial Lawyers Association to file amicus curiae briefs. 155 Ill.2d R. 345.

## ANALYSIS

[1][2][3][4][5][6] A section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2002)) challenges the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
(Cite as: --- N.E.2d ----)

legal sufficiency of a complaint based on defects apparent on its face. *City of Chicago v. Beretta U.S.A. Corp.,* 213 Ill.2d 351, 364, 290 Ill.Dec. 525, 821 N.E.2d 1099 (2004). Therefore, we review *de novo* an order granting or denying a section 2-615 motion. *Wakulich v. Mraz,* 203 Ill.2d 223, 228, 271 Ill.Dec. 649, 785 N.E.2d 843 (2003) . In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Ferguson v. City of Chicago,* 213 Ill.2d 94, 96-97, 289 Ill.Dec. 679, 820 N.E.2d 455 (2004). We also construe the allegations in the complaint in the light most favorable to the plaintiff. *King v. First Capital Financial Services Corp.,* 215 Ill.2d 1, 11-12, 293 Ill.Dec. 657, 828 N.E.2d 1155 (2005). Thus, a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Canel v. Topinka,* 212 Ill.2d 311, 318, 288 Ill.Dec. 623, 818 N.E.2d 311 (2004). We have repeatedly stated, however, that Illinois is a fact-pleading jurisdiction. See, *e.g., Weiss v. Waterhouse Securities, Inc.,* 208 Ill.2d 439, 451, 281 Ill.Dec. 571, 804 N.E.2d 536 (2004). While the plaintiff is not required to set forth evidence in the complaint (*Chandler v. Illinois Central R.R. Co.,* 207 Ill.2d 331, 348, 278 Ill.Dec. 340, 798 N.E.2d 724 (2003)), the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action (*Vernon v. Schuster,* 179 Ill.2d 338, 344, 228 Ill.Dec. 195, 688 N.E.2d 1172 (1997)), not simply conclusions ( *Anderson v. Vanden Dorpel,* 172 Ill.2d 399, 408, 217 Ill.Dec. 720, 667 N.E.2d 1296 (1996)).

[7][8][9] To state a cause of action for negligence, a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Bajwa v. Metropolitan Life Insurance Co.,* 208 Ill.2d 414, 421, 281 Ill.Dec. 554, 804 N.E.2d 519 (2004). Whether a duty exists in a particular case is a question of law for the court to decide. *Chandler,* 207 Ill.2d at 340, 278 Ill.Dec. 340, 798 N.E.2d 724. On the contrary, whether a defendant breached the duty and whether the breach was the proximate cause of the plaintiff's injuries are factual matters for the jury to decide, provided there is a genuine issue of material fact regarding those issues. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.,* 165

Ill.2d 107, 114, 208 Ill.Dec. 662, 649 N.E.2d 1323 (1995).

Defendants argue that plaintiff failed to state a cause of action for negligence against them. Their general contentions are that they owed no duty of care to the decedent and that, as a matter of law, their conduct did not proximately cause the decedent's injuries. Plaintiff disputes these contentions.

[10][11] As a preliminary matter, we find that defendants have forfeited their argument regarding proximate cause for purposes of this appeal. Defendants argue for the first time before this court that, as a matter of law, the allegations in plaintiff's complaint are insufficient to demonstrate that their conduct proximately caused the decedent's injuries. According to defendants, their conduct merely furnished a condition that contributed to harm caused by the subsequent, independent act of a third party. It is well settled that where the appellate court reverses the judgment of the circuit court, and the appellee in that court brings the case before this court as an appellant, that party may raise any issues properly presented by the record to sustain the judgment of the circuit court. *In re R.L.S.,* 218 Ill.2d 428, 437, 300 Ill.Dec. 350, 844 N.E.2d 22 (2006), quoting *Dineen v. City of Chicago,* 125 Ill.2d 248, 264, 126 Ill.Dec. 52, 531 N.E.2d 347 (1988), quoting *Mueller v. Elm Park Hotel,* 391 Ill. 391, 399, 63 N.E.2d 365 (1945). Defendants prevailed in the circuit court, were the appellees before the appellate court, and appealed the judgment of the appellate court to this court. However, defendants moved to dismiss plaintiff's complaint in the circuit court solely on the basis that they owed no duty of care to the decedent. They did not argue proximate cause in their motion to dismiss, and the trial court's ruling was limited to the issue of whether plaintiff adequately pleaded the existence of a duty. Therefore, the issue of proximate cause is not properly presented by the record in this case. We thus turn to the issue of duty.

According to defendants, they owed no duty to the decedent to protect him against the possibility of an out-of-control car penetrating the restaurant and injuring him. They characterize the incident at issue as "highly extraordinary" and "tragically bizarre" and, therefore, not reasonably foreseeable. They also emphasize that the likelihood of similar

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

incidents occurring in the future is very slight and that the burden imposed on them and the business community at large will be considerable if we determine they owed a duty to the decedent. Defendants criticize the appellate court for determining that a duty existed in this case without specifically considering the foreseeability of the decedent's injury, the likelihood of the injury, the magnitude of the burden of guarding against it, and the consequences of placing the burden on them. Further, they argue that the allegations in plaintiff's complaint regarding their purported violations of the BOCA building code and deviations from the custom and practice of the building industry do not support the finding that they owed a duty to the decedent.

Plaintiff disputes defendants' contention that they owed no duty of care to the decedent. He argues that because the decedent was defendants' business invitee, defendants owed the decedent a duty to ensure that the premises of their restaurant were reasonably safe for the decedent's use. Moreover, according to plaintiff, it was readily foreseeable that a customer sitting in the dining area of defendants' restaurant could be injured in the manner in which the decedent was injured. Plaintiff emphasizes that no protective poles were built around the restaurant, the restaurant was "bricked up" only a few feet from the ground, the restaurant was located in an area with heavy traffic, and the restaurant's parking lot was located directly adjacent to its entrance and dining area. In addition, plaintiff characterizes the precautions that he alleges defendants could have taken to prevent the decedent's death as "minimal undertakings at best."

Before addressing the substance of the parties' arguments on the issue of duty, we must clarify the scope of our inquiry into the sufficiency of plaintiff's complaint. As mentioned, the complaint alleges that Burger King "owned, operated, controlled[,] and maintained" the restaurant at the Rockford location "by and through its agents, servants, employees, [and] franchisees." It also alleges that, by and through the same parties, Burger King "directed and controlled the [restaurant's] design, construction, layout, floor plan [,] and building material specifications." The complaint repeats virtually identical allegations with respect to Davekiz, Burger King's franchisee, and contains specific allegations of negligence against both

defendants that refer to the design, construction, and maintenance of the restaurant.

[12] Plaintiff's complaint can reasonably be construed as setting forth theories of liability against each defendant in its capacity as the owner, operator, designer, and builder of the restaurant. However, in briefing and orally arguing this case, the parties focused solely on defendants' potential liability as owners and operators of the restaurant. A cause of action for negligent design is distinguishable from a cause of action for negligent construction. Compare, *e.g.*, *Hunt v. Blasius*, 74 Ill.2d 203, 209, 23 Ill.Dec. 574, 384 N.E.2d 368 (1978) (contractor may be liable in negligence if it follows specifications that are "so obviously dangerous that no competent contractor would follow them"), with *Ferentchak v. Village of Frankfort*, 105 Ill.2d 474, 479-80, 86 Ill.Dec. 443, 475 N.E.2d 822 (1985) (distinguishing cause of action against contractor in *Hunt* from cause of action against civil engineer on ground that engineer "was not following the design of [the developer], but instead was creating one"). Furthermore, neither a cause of action for negligent design nor a cause of action for negligent construction is dependent upon an injured party's status as a business invitee, as may be the case with a cause of action for negligence against the owner or operator of a business. See, *e.g.*, *Rowe v. State Bank of Lombard*, 125 Ill.2d 203, 216, 126 Ill.Dec. 519, 531 N.E.2d 1358 (1988) ("special relationship" between business invitor and business invitee may give rise to duty to protect against the criminal acts of others). Because the parties have presented no arguments regarding the negligent-design and negligent-construction theories set forth in the complaint, we confine our discussion to whether defendants owed a duty to the decedent in their capacities as owners and operators of the restaurant. In addition, we express no opinion at this time on what effect, if any, Burger King's status as Davekiz's franchisor may have on Burger King's liability in this case. See *O'Banner v. McDonald's Corp.*, 173 Ill.2d 208, 211-14, 218 Ill.Dec. 910, 670 N.E.2d 632 (1996) (addressing at summary judgment phase of proceedings whether franchisor was vicariously liable under theory of apparent agency for injuries plaintiff incurred after slipping and falling in franchised restaurant's restroom).

Turning to the arguments of the parties, we initially

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
(Cite as: --- N.E.2d ----)

observe that plaintiff has cited *Ray v. Cock Robin, Inc.,* 57 Ill.2d 19, 310 N.E.2d 9 (1974), in support of his contention that defendants owed the decedent a duty of care. In *Ray,* the plaintiffs were seated at a picnic table in front of an ice cream stand owned and operated by Cock Robin, Inc., when they were struck by an out-of-control car. *Ray,* 57 Ill.2d at 21, 310 N.E.2d 9. They filed a negligence action against Cock Robin, the driver of the car, and the mechanic who serviced the car before the accident. *Ray,* 57 Ill.2d at 20, 310 N.E.2d 9. The jury rendered a verdict in favor of Cock Robin, and the appellate court reversed and remanded the cause for a new trial. *Ray,* 57 Ill.2d at 20-21, 310 N.E.2d 9. This court affirmed the judgment of the appellate court. *Ray,* 57 Ill.2d at 24, 310 N.E.2d 9.

The issue in *Ray* was whether the trial court erred in excluding testimony from a police officer at trial that would have indicated that he witnessed a car run into a bicycle rack in front of Cock Robin's picnic tables sometime during the month preceding the accident at issue. *Ray,* 57 Ill.2d at 21-22, 310 N.E.2d 9. The testimony would further have revealed that the officer informed one of Cock Robin's employees that the picnic tables were located in a dangerous area and that the employee told the officer Cock Robin had been informed of the danger. *Ray,* 57 Ill.2d at 22, 310 N.E.2d 9. Cock Robin argued that its failure to take measures to protect its patrons against the possibility of a vehicle leaving the roadway and striking them was not a proximate cause of the accident, but merely a condition that made the plaintiffs' injuries possible through the subsequent, independent act of a third party. *Ray,* 57 Ill.2d at 22, 310 N.E.2d 9.

In discussing whether the exclusion of the police officer's testimony was prejudicial to the plaintiffs, this court focused on the effect the evidence would have had on the jury's assessment of the foreseeability of the accident and, accordingly, on its decision regarding the proximate cause of the accident. See *Ray,* 57 Ill.2d at 22-23, 310 N.E.2d 9. This court concluded that because the testimony tended to establish that the defendant was aware of the possible danger that the location of its picnic tables and bicycle rack posed to its patrons (*Ray,* 57 Ill.2d at 22-23, 310 N.E.2d 9), the testimony created a "factual question * * * about which reasonable persons might differ as to whether the condition of [the defendant's] property was a proximate cause of the injuries." *Ray,* 57 Ill.2d at 23, 310 N.E.2d 9. Thus, the cause was remanded for a new trial. *Ray,* 57 Ill.2d at 23, 310 N.E.2d 9.

It is readily apparent that *Ray* dealt with the issue of proximate cause, not the issue of duty. Notably, in *Ray,* Cock Robin did not dispute its "duty to protect patrons from unreasonable risks of harm." *Ray,* 57 Ill.2d at 22, 310 N.E.2d 9. Therefore, Cock Robin's duty to the plaintiffs was not at issue, and this court expressed no opinion on it. See also *Marquardt,* 18 Ill.App.2d at 142-46, 151 N.E.2d 109 (based on evidence presented at trial, jury could reasonably have found that landowners' failure to supervise parking or provide parking barriers proximately caused injuries of plaintiff struck by car that rolled down hill located on landowners' premises). Accordingly, in this case, we must look elsewhere to determine whether defendants owed a duty of care to the decedent.

[13] This court has recognized that "the concept of duty in negligence cases is very involved, complex and indeed nebulous." *Mieher v. Brown,* 54 Ill.2d 539, 545, 301 N.E.2d 307 (1973). Legal scholars have long debated the nature of duty and its proper role in negligence law (see, *e.g.,* W. Powers, *Judge and Jury in the Texas Supreme Court,* 75 Tex. L.Rev. 1699, 1701-04 (1997)), and the debate has become a subject of renewed interest in recent years (see, *e.g.,* J. Goldberg, *Introduction to the Restatement (Third) of Torts: General Principles and the John W. Wade Conference,* 54 Vand. L.Rev. 639, 639-40 (2001); H. Perlman, *The Restatement Process,* 10 Kan. J.L. & Pub. Pol'y 2, 2-7 (2000)). Much confusion over duty stems from courts' tendency to attribute a variety of different meanings to the term. See, *e.g.,* 1 D. Dobbs, Torts § 226, at 577 (2001) ("[L]awyers and judges use the term duty in a variety of different ways, not always with the same meaning. Sometimes they use duty to refer to a general standard or obligation. At other times they use duty as a conclusion about whether the defendant's particular act or omission should be actionable, irrespective of any general standard"); J. Goldberg & B. Zipursky, *The Restatement (Third) and the Place of Duty in Negligence Law,* 54 Vand. L.Rev. 657, 698-723 (2001) (distinguishing between four different "senses" in which duty is used in negligence law, including duty as obligation, duty as nexus between breach and duty, duty as breach as a matter of law, and duty as exemption

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

from the operation of negligence law). Relatedly, confusion over duty arises because, as one well-known treatise aptly states, "the existence of a duty is not a discoverable fact of nature." 1 D. Dobbs, Torts § 229, at 582 (2001). On the contrary, determining whether a duty should be imposed involves considerations of public policy. 1 D. Dobbs, Torts § 229, at 582 (2001); *Jones v. Chicago HMO Ltd. of Illinois,* 191 Ill.2d 278, 303, 246 Ill.Dec. 654, 730 N.E.2d 1119 (2000) ("the existence of a duty turns in large part on public policy considerations").

[14] The touchstone of this court's duty analysis is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Happel v. Wal-Mart Stores, Inc.,* 199 Ill.2d 179, 186, 262 Ill.Dec. 815, 766 N.E.2d 1118 (2002); *Mieher,* 54 Ill.2d at 541, 301 N.E.2d 307. This court often discusses the policy considerations that inform this inquiry in terms of four factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant. *Beretta U.S.A.,* 213 Ill.2d at 391, 290 Ill.Dec. 525, 821 N.E.2d 1099; *Ward v. K mart Corp.,* 136 Ill.2d 132, 140-41, 143 Ill.Dec. 288, 554 N.E.2d 223 (1990); *Lance v. Senior,* 36 Ill.2d 516, 518, 224 N.E.2d 231 (1967).

[15] In the case before us, the appellate court resolved the duty issue without reference to these factors, focusing instead on the relationship between defendants, as owners and operators of the restaurant, and the decedent, as defendants' business invitee, in finding that defendants owed a duty of care to the decedent. See 355 Ill.App.3d at 688-90, 291 Ill.Dec. 805, 824 N.E.2d 661. Conversely, defendants rely extensively on the factors expressed above in arguing that they owed no duty to the decedent. Plaintiff emphasizes the relationship between defendants and the decedent in arguing that defendants owed the decedent a duty of care, but also asserts that the factors discussed by defendants support the imposition of a duty. As we shall explain, the special relationship between a business invitor and invitee does indeed give rise to a duty of reasonable care that is applicable to this case, and the factors relied on by defendants do not support

the creation of an exemption from that duty.

Under certain circumstances, a possessor of land may be held liable for physical harm caused to an individual present on the land by a condition on the land (Restatement (Second) of Torts §§ 343, 343A (1965)) or by the acts of third persons (Restatement (Second) of Torts § 344 (1965)). While sections 343 , 343A, and 344 of the Restatement address the broader subject of liability, this court has looked to them in the past in determining whether a possessor of land owed a duty to an individual present on the land. See, *e.g., Genaust v. Illinois Power Co.,* 62 Ill.2d 456, 468-69, 343 N.E.2d 465 (1976) (referring to section 343); *Ward,* 136 Ill.2d at 145-46, 149-51, 143 Ill.Dec. 288, 554 N.E.2d 223 (referring to sections 343 and 343A); *Deibert v. Bauer Brothers Construction Co.,* 141 Ill.2d 430, 434-35, 152 Ill.Dec. 552, 566 N.E.2d 239 (1990) (same); *American National Bank & Trust Co. of Chicago v. National Advertising Co.,* 149 Ill.2d 14, 26-27, 171 Ill.Dec. 461, 594 N.E.2d 313 (1992) (same); *LaFever v. Kemlite Co.,* 185 Ill.2d 380, 389-90, 235 Ill.Dec. 886, 706 N.E.2d 441 (1998) (same); *Hills v. Bridgeview Little League Ass'n,* 195 Ill.2d 210, 244, 253 Ill.Dec. 632, 745 N.E.2d 1166 (2000) (referring to section 344). In the case before us, plaintiff does not explicitly mention the Restatement, and defendants refer only to section 344 in arguing that they owed no duty to protect the decedent against the unforeseeable act of a third person. Section 344 provides in relevant part:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons * * * and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." Restatement (Second) of Torts § 344 (1965).

As this court has observed in the past (see *Hills,* 195 Ill.2d at 243-44, 253 Ill.Dec. 632, 745 N.E.2d 1166), section 344 represents a specific statement of the general rule articulated in section 314A of the Restatement, and long recognized by this court, that certain special relationships may give rise to an affirmative duty to aid or protect another against

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

unreasonable risk of physical harm. See Restatement (Second) of Torts § 314A (1965); *Fancil v. Q.S.E. Foods, Inc.,* 60 Ill.2d 552, 559-60, 328 N.E.2d 538 (1975). Section 314A and this court recognize four such relationships: common carrier and passenger, innkeeper and guest, custodian and ward, and possessor of land who holds it open to the public and member of the public who enters in response to the possessor's invitation. Restatement (Second) of Torts § 314A (1965); *Fancil,* 60 Ill.2d at 560, 328 N.E.2d 538; *Hills,* 195 Ill.2d at 243-44, 253 Ill.Dec. 632, 745 N.E.2d 1166. The latter relationship, which is at issue in this case, may also be referred to as the relationship between business invitor and invitee. See, *e.g., Rowe,* 125 Ill.2d at 216, 126 Ill.Dec. 519, 531 N.E.2d 1358; *Hills,* 195 Ill.2d at 248-49, 253 Ill.Dec. 632, 745 N.E.2d 1166 .

This court's decision in *Hills v. Bridgeview Little League Ass'n* expresses the rationale for recognizing the duty of reasonable care to which the special relationship between a business invitor and invitee gives rise. In *Hills,* this court considered whether two Little League organizations owed a duty of care to a coach who was attacked by the manager and assistant coach for an opposing team while he was coaching in a Little League tournament. *Hills,* 195 Ill.2d at 212-13, 253 Ill.Dec. 632, 745 N.E.2d 1166. This court ultimately held that no business invitor-invitee relationship existed between the Little League organization that hosted the tournament and the plaintiff coach. *Hills,* 195 Ill.2d at 251, 253 Ill.Dec. 632, 745 N.E.2d 1166. Accordingly, the Little League organization owed no duty of care to the coach. *Hills,* 195 Ill.2d at 252, 253 Ill.Dec. 632, 745 N.E.2d 1166.

In the course of its analysis, the court in *Hills* observed that when a possessor of land opens his premises to the public for business purposes, he must recognize the risk that has been created, noting:

" '[P]laces to which the general public are invited might indeed anticipate, either from common experience or known fact, that places of general public resort are also places where what men can do, they might. One who invites all may reasonably expect that all might not behave, and bears responsibility for injury that follows the absence of reasonable precaution against that common expectation.' " *Hills,* 195 Ill.2d at 245-46, 253 Ill.Dec. 632, 745 N.E.2d 1166, quoting *Feld v. Merriam,* 506 Pa. 383, 391, 485 A.2d 742, 745 (1984).

While *Hills* involved a party's liability for the criminal act of a third person, we find the rationale expressed above to apply with equal force where, as here, the negligent act of a third person is at issue. *Cf.* Restatement (Second) of Torts § 314A, Comment *d,* at 119 (1965) (duty to protect against unreasonable risk of physical harm set forth in section 314A extends to risks arising from third-party acts "whether [the acts] be innocent, negligent, intentional, or even criminal"); Restatement (Second) of Torts § 344 (1965) (business invitor's liability to invitee encompasses "physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons" and invitor's failure to exercise reasonable care to discover the harmful acts, give warning allowing them to be avoided, or otherwise protect against them). Indeed, as the Restatement suggests, an actor typically has greater reason to anticipate negligence than to anticipate criminal misconduct, as it is generally reasonable for one to assume that a person will not violate the criminal law. See Restatement (Second) of Torts § 302B, Comment *d,* at 89 (1965).

[16][17] Based on the allegations in plaintiff's complaint, the duty of care that a business invitor owes to invitees to protect them against the unreasonable risk of physical harm is clearly applicable to this case. The complaint alleges that while the decedent was a customer at a restaurant owned and operated by defendants, he was injured by the negligent act of a third person-namely, Fritz's act of driving her car into the restaurant. Defendants' business, a restaurant, is undoubtedly of such a nature that it places defendants in a special relationship with their customers, as it is an establishment open to the general public for business purposes. See *Hills,* 195 Ill.2d at 246, 253 Ill.Dec. 632, 745 N.E.2d 1166 (generally, nature of business landholder conducts on premises is relevant to determining whether business stands in special relationship with customers), 247-51 (appropriate test for determining existence of business invitor-invitee special relationship is whether premises are open to general public for business purposes). In addition, the duty of care that arises from the business invitor-invitee relationship encompasses the type of risk-*i.e.,* the negligent act of a third person-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that led to the decedent's injuries. See Restatement (Second) of Torts § 314A, Comment *d*, at 119 (1965); Restatement (Second) of Torts § 344 (1965). Thus, we conclude that plaintiff's complaint alleges facts sufficient to establish that defendants owed a duty of care to the decedent.

This conclusion, however, does not end our inquiry into the duty issue. In referring to the four factors this court traditionally considers in its duty analysis, defendants have essentially asked us to create an exemption from the duty of care that stems from the special relationship between a business invitor and invitee. We decline to do so.

As noted above, the existence of a duty turns in large part on considerations of public policy. *Jones,* 191 Ill.2d at 303, 246 Ill.Dec. 654, 730 N.E.2d 1119. Indeed, this court has stated, in agreement with one well-known treatise, that " ' "duty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.' " *Kirk v. Michael Reese Hospital & Medical Center,* 117 Ill.2d 507, 527, 111 Ill.Dec. 944, 513 N.E.2d 387 (1987), quoting W. Keeton, Prosser & Keeton on Torts § 53, at 358 (5th ed.1984). Thus, in determining whether a plaintiff and a defendant stand in such a relationship to one another that the law imposes an obligation of reasonable conduct on the defendant for the benefit of the plaintiff (*Happel,* 199 Ill.2d at 186, 262 Ill.Dec. 815, 766 N.E.2d 1118), we are confronted with a decision of policy.

In the case of a business invitee harmed by the negligent act of a third person, the policy justifying the business invitor's duty of reasonable care is related to the affirmative action the invitor takes in opening his business to the public and to the potential for harm that a business open to the general public poses. See *Hills,* 195 Ill.2d at 245-46, 253 Ill.Dec. 632, 745 N.E.2d 1166. Thus, the policy subjecting defendants to liability in this case is clear. On the contrary, the no-duty rule defendants would have this court adopt lacks a sound basis in policy. As one treatise states, "Rules declaring that no duty exists can easily be made too broad or too narrow. Because they are rules of law, not decisions about particular cases, they cover all cases in the category to which they are addressed. They are expressions of 'global' policy rather than

evaluations of specific facts of the case. Consequently, no-duty rules should be invoked only when all cases they cover fall substantially within the policy that frees the defendant of liability." 1 D. Dobbs, Torts § 227, at 579 (2001). Here, none of the considerations defendants rely on compel us to hold that, as a matter of law, landholders who open their land to the public for business purposes have no duty to protect invitees against out-of-control drivers. We see no merit in such an exemption.

[18][19] Initially, we note that it is reasonably foreseeable, given the pervasiveness of automobiles, roadways, and parking lots, that business invitees will, from time to time, be placed at risk by automobile-related accidents. As one court has observed, "what is required to be foreseeable is the general character of the event or harm * * * not its precise nature or manner of occurrence." *Bigbee v. Pacific Telephone & Telegraph Co.,* 34 Cal.3d 49, 57-58, 665 P.2d 947, 952, 192 Cal.Rptr. 857, 862 (1983); see also *Blue v. St. Clair Country Club,* 7 Ill.2d 359, 364, 131 N.E.2d 31 (1955) ( "[I]n order for liability to attach, it is not necessary that the exact method by which the injury occurred could have been expected. It is sufficient if some resulting injury could have been reasonably foreseen"). Relatedly, the likelihood that injury will occur to invitees in such instances is quite high, as even a cursory glance at a selection of the cases the parties have cited to us demonstrates. See, *e.g., Ray,* 57 Ill.2d at 21, 310 N.E.2d 9; *Stutz,* 204 Ill.App.3d at 901, 149 Ill.Dec. 935, 562 N.E.2d 399; *Simmons,* 162 Ill.App.3d at 240, 113 Ill.Dec. 594, 515 N.E.2d 403; *Marquardt,* 18 Ill.App.2d at 137, 151 N.E.2d 109. Finally, the extensive costs to businesses and to the public that defendants claim will arise by not creating an exemption from the applicable duty of care are speculative at best. Defendants argue that businesses will incur an immense financial burden if required to protect their invitees from out-of-control automobiles and that the protective measures businesses take will make buildings everywhere less aesthetically pleasing. These arguments are based on mistaken assumptions about the nature of a duty of care. Recognizing that the duty of reasonable care that businesses owe to their invitees applies to cases where invitees are injured by out-of-control automobiles is not the same as concluding the duty has been breached because a business failed to take a certain level of precaution. Nor is it the same as concluding that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

breach was the proximate cause of an invitee's injuries. In short, merely concluding that the duty applies does not constitute an automatic, broad-based declaration of negligence liability.

Further, to the extent defendants suggest we could create a rule of law narrower than the exemption discussed above to absolve them of liability, they are actually requesting that we determine, as a matter of law, that they did not *breach* their duty of care. It is inadvisable for courts to conflate the concepts of duty and breach in this manner. Courts could, after all, "state an infinite number of duties if they spoke in highly particular terms," and while particularized statements of duty may be comprehensible, "they use the term duty to state conclusions about the facts of particular cases, not as a general standard." 1 D. Dobbs, Torts § 226, at 577 (2001); see also 54 Vand. L.Rev. at 712-17 (discussing problems associated with using the duty element of negligence to render decisions that no breach occurred as a matter of law). Thus, the issue in this case is not whether defendants had a duty to install protective poles, or a duty to prevent a car from entering the restaurant, or some such other fact-specific formulation. Because of the special relationship between defendants and the decedent, they owed the decedent a duty of reasonable care. The issue is whether, in light of the particular circumstances of this case, defendants breached that duty. That question cannot be answered at this stage of the proceedings. See *Espinoza,* 165 Ill.2d at 114, 208 Ill.Dec. 662, 649 N.E.2d 1323 (issue of breach is for jury to decide provided there is genuine issue of material fact regarding that issue).

[20] Finally, we address defendants' argument that comment *f* of section 344 of the Restatement supports a finding that they owed no duty to the decedent. Comment *f* provides:

"Since the possessor [of land] is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably

anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." Restatement (Second) of Torts § 344, Comment *f*, at 225-26 (1965).

Defendants do not specify which of the principles set forth in comment *f* they believe are applicable to this case. However, based on their citation to *Cobb v. Martin IGA & Frozen Food Center, Inc.,* 337 Ill.App.3d 306, 271 Ill.Dec. 748, 785 N.E.2d 942 (2003), they appear to suggest that comment *f* stands for the proposition that before a duty of care may be imposed on a possessor of land to protect an individual from the negligent conduct of a third person, the possessor of land must have notice of a prior, similar incident of negligent third-party conduct. In *Cobb,* a child negligently ran into the plaintiff with a grocery cart while the plaintiff was shopping in a store owned and operated by the defendant. *Cobb,* 337 Ill.App.3d at 308, 271 Ill.Dec. 748, 785 N.E.2d 942. A majority of the appellate court affirmed the circuit court's grant of summary judgment in favor of the defendant. *Cobb,* 337 Ill.App.3d at 314, 271 Ill.Dec. 748, 785 N.E.2d 942. In doing so, the court relied in part on its interpretation of various Restatement comments, including comment *f* of section 344, as standing for the propositions that "a defendant must have some notice of a prior incident or prior conduct before the law imposes a duty to protect a plaintiff from the conduct of a third party" and "[t]he prior incident must be sufficiently similar to put a defendant on notice that there is a reasonable probability that the acts of the third party are likely to cause physical harm to others." *Cobb,* 337 Ill.App.3d at 313, 271 Ill.Dec. 748, 785 N.E.2d 942.

Because defendants' argument regarding the imposition of a notice requirement is not fully developed, we limit our discussion to the terms of comment *f,* which most decidedly do not contemplate a notice requirement as stringent as that suggested by defendants. We find *Cobb's* interpretation of the comment unpersuasive, as it is unsupported by citations to authority or references to specific language from the Restatement. See *Cobb,* 337 Ill.App.3d at 313, 271 Ill.Dec. 748, 785 N.E.2d 942. Applying the comment to this case, we observe that plaintiff's complaint clearly falls within

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

its purview, as it alleges that, based on the place and character of defendants' business, defendants had reason to know that the negligent conduct of third persons was likely to endanger defendants' customers. See Restatement (Second) of Torts § 344 , Comment *f* (1965). Specifically, the complaint alleges that the restaurant is located in an area with a "high traffic count"; that various aspects of its design, including its "brick half wall," and its sidewalk, render it susceptible to penetration by out-of-control automobiles; that defendants took no precautions, such as installing "vertical concrete pillars or poles," to prevent automobiles from entering the restaurant; and that defendants had knowledge of all of the foregoing. Thus, even assuming for the sake of argument that a business invitor's lack of knowledge of prior, similar incidents of negligent conduct should limit his duty of care (see generally 2 D. Dobbs, Torts § 324, at 877-79 (2001)) (discussing various approaches courts have taken to determining the relevance of prior, similar incidents of criminal conduct to property owners' negligence liability), we reject defendant's contention that comment *f* supports a finding that defendants owed no duty of care to the decedent.

Having determined, based on the allegations in plaintiff's complaint, that defendants owed a duty of reasonable care to the decedent, we briefly examine the effect of our decision on *Simmons v. Aldi-Brenner Co.* and *Stutz v. Kamm.* Defendants cited these factually analogous appellate court decisions to this court as authority for their position regarding the duty issue.

*Simmons* is in part distinguishable from the instant case, because it involved the review of a jury verdict, not of a ruling on a motion to dismiss. *Simmons,* 162 Ill.App.3d at 240, 113 Ill.Dec. 594, 515 N.E.2d 403. The plaintiffs in *Simmons* were injured when a driver blacked out behind the wheel of her car and the car crashed into a grocery store where the plaintiffs were shopping. *Simmons,* 162 Ill.App.3d at 240-41, 113 Ill.Dec. 594, 515 N.E.2d 403. The plaintiffs filed suit against the car's driver, the owners of the premises, and the lessee of the premises, Aldi-Brenner Company. *Simmons,* 162 Ill.App.3d at 240, 113 Ill.Dec. 594, 515 N.E.2d 403. A jury rendered verdicts in favor of the driver and the owners but against Aldi-Brenner. *Simmons,* 162 Ill.App.3d at 240, 113 Ill.Dec. 594, 515

N.E.2d 403.

The appellate court reversed the judgment against Aldi-Brenner and affirmed the judgment in favor of the premises owners. *Simmons,* 162 Ill.App.3d at 244, 113 Ill.Dec. 594, 515 N.E.2d 403. The court stated that the owner or occupier of land owes a business invitee "the duty of exercising ordinary and reasonable care to see that the premises are reasonably safe for use" but qualified this acknowledgment by stating that "a storekeeper is not the insurer of his customers' safety." *Simmons,* 162 Ill.App.3d at 242, 113 Ill.Dec. 594, 515 N.E.2d 403. It then went on to decide "whether a duty existed as a matter of law" (*Simmons,* 162 Ill.App.3d at 242, 113 Ill.Dec. 594, 515 N.E.2d 403) and concluded "that a duty did not legally exist requiring [the defendants] to protect against the injury caused by the * * * automobile" (*Simmons,* 162 Ill.App.3d at 244, 113 Ill.Dec. 594, 515 N.E.2d 403). The court relied primarily on the observation that it would have been "mere speculation" to say that any of the safety features discussed by the plaintiffs' expert at trial (see *Simmons,* 162 Ill.App.3d at 242-43, 113 Ill.Dec. 594, 515 N.E.2d 403), including the installation of a protective wall (*Simmons,* 162 Ill.App.3d at 244, 113 Ill.Dec. 594, 515 N.E.2d 403), would have prevented the car from entering the store. *Simmons,* 162 Ill.App.3d at 244, 113 Ill.Dec. 594, 515 N.E.2d 403. It also reasoned that finding the existence of a duty "would place a burden on every store, near a street or parking lot, of constructing barriers adequate to prevent any car from being driven into the building." *Simmons,* 162 Ill.App.3d at 244, 113 Ill.Dec. 594, 515 N.E.2d 403. In addition, the court opined that the accident was not foreseeable as a matter of law. *Simmons,* 162 Ill.App.3d at 244, 113 Ill.Dec. 594, 515 N.E.2d 403.

*Simmons* applied inaccurate terminology in concluding "a duty did not legally exist" that the defendants owed to the plaintiffs. See *Simmons,* 162 Ill.App.3d at 244, 113 Ill.Dec. 594, 515 N.E.2d 403. Based on our analysis of the duty issue in this case, it is clear that the defendants in *Simmons* owed the plaintiffs a duty of reasonable care. This, however, does not render *Simmons* irreconcilable with our decision here. The appellate court's decision in *Simmons* was premised on an evaluation of the evidence the parties presented at trial. See

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Simmons,* 162 Ill.App.3d at 242-44, 113 Ill.Dec. 594, 515 N.E.2d 403. To the extent *Simmons* stands for the proposition that, as a matter of law, the evidence failed to establish that the defendants breached their duty of care or proximately caused the plaintiffs' injuries, it is not inconsistent with our decision in this case, which involves the dismissal of a complaint.

Turning to *Stutz,* we note that it relied heavily on *Simmons* in holding that the defendants owed no duty to the plaintiffs. See *Stutz,* 204 Ill.App.3d at 905-06, 149 Ill.Dec. 935, 562 N.E.2d 399. *Stutz,* however, differs from *Simmons,* in two significant respects. First, *Stutz* involved two separate duty issues: the duty of a landowner to its business invitees and the duty of an independent contractor to those affected by alleged defects in the contractor's construction. See *Stutz,* 204 Ill.App.3d at 901-04, 149 Ill.Dec. 935, 562 N.E.2d 399. Second, *Stutz* was decided at the pleadings stage of the plaintiffs' negligence actions. *Stutz,* 204 Ill.App.3d at 903, 149 Ill.Dec. 935, 562 N.E.2d 399.

In *Stutz,* a car in the parking lot of a driver's licensing facility crashed into the facility's waiting area, killing one woman and seriously injuring another. *Stutz,* 204 Ill.App.3d at 900-01, 149 Ill.Dec. 935, 562 N.E.2d 399. Two separate negligence actions were filed against various parties, including the contractor that constructed the facility's parking lot and the facility's owners. *Stutz,* 204 Ill.App.3d at 901, 149 Ill.Dec. 935, 562 N.E.2d 399. The plaintiffs alleged that the contractor breached its duty to perform work on the parking lot in a workmanlike manner and, alternatively, that the specifications the contractor followed were so obviously dangerous that no contractor would have followed them. *Stutz,* 204 Ill.App.3d at 901, 149 Ill.Dec. 935, 562 N.E.2d 399. According to the plaintiffs' complaints, the contractor negligently failed to build "bumpers or other stops" around the facility and negligently constructed numerous other aspects of the parking lot. *Stutz,* 204 Ill.App.3d at 902, 149 Ill.Dec. 935, 562 N.E.2d 399. In addition, the plaintiffs alleged that the owners of the facility breached the duty of care they owed to the plaintiffs by failing to maintain their building and parking lot in a reasonably safe condition. *Stutz,* 204 Ill.App.3d at 902, 149 Ill.Dec. 935, 562 N.E.2d 399. Both the contractor and the owners filed motions to dismiss,

which the circuit court granted. *Stutz,* 204 Ill.App.3d at 903, 149 Ill.Dec. 935, 562 N.E.2d 399.

The appellate court affirmed the judgment of the circuit court. *Stutz,* 204 Ill.App.3d at 903, 149 Ill.Dec. 935, 562 N.E.2d 399. The court stated that a premises owner owes "a duty to invitees of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them." *Stutz,* 204 Ill.App.3d at 904, 149 Ill.Dec. 935, 562 N.E.2d 399. It also recognized that an independent contractor has a duty to perform its work "in accordance with the plans and specifications in a good workmanlike manner" and to refrain from following plans and specifications that "are so obviously dangerous that no competent contractor would follow them." *Stutz,* 204 Ill.App.3d at 904, 149 Ill.Dec. 935, 562 N.E.2d 399. However, the court went on to conclude that "considering all the factors present in plaintiffs' complaints * * * a duty did not legally exist requiring defendants to prevent the type of harm which occurred." *Stutz,* 204 Ill.App.3d at 906, 149 Ill.Dec. 935, 562 N.E.2d 399. In affirming the circuit court's dismissal of the plaintiffs' complaints, the appellate court applied the same rationale to the plaintiffs' claims against the defendant contractor and the defendant owners. *Stutz,* 204 Ill.App.3d at 906, 149 Ill.Dec. 935, 562 N.E.2d 399. Relying on *Simmons,* the court reasoned that "it would be mere speculation to say the accident would have been prevented if defendants had performed the omissions or not performed the negligent acts which plaintiffs allege in their complaints." *Stutz,* 204 Ill.App.3d at 906, 149 Ill.Dec. 935, 562 N.E.2d 399. The court further stated that placing a duty upon the defendants to guard against the type of harm at issue would be an "unreasonable burden." *Stutz,* 204 Ill.App.3d at 906, 149 Ill.Dec. 935, 562 N.E.2d 399. Additionally, the court determined that the accident was not foreseeable as a matter of law. *Stutz,* 204 Ill.App.3d at 906, 149 Ill.Dec. 935, 562 N.E.2d 399.

We express no opinion on *Stutz's* dismissal of the plaintiffs' negligence claims against the defendant contractor. Those claims relied on a theory of negligent construction, and our decision regarding defendants' duty of care to the decedent does not address such a theory. However, insofar as *Stutz*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

held that the owner defendants owed no duty of care to the plaintiffs, we find that it was incorrectly decided. Unlike *Simmons, Stutz* involved a ruling on a motion to dismiss. To the extent *Stutz* is inconsistent with our decision in this case, it is hereby overruled.

Finally, we note that defendants' reliance on authority from other jurisdictions involving situations where out-of-control vehicles crashed into business establishments is unpersuasive. See *Howe v. Stubbs,* 570 A.2d 1203 (Me.1990); *Carpenter v. Stop-N-Go Markets of Georgia, Inc.,* 512 So.2d 708 (Miss.1987); *Mack v. McGrath,* 276 Minn. 419, 150 N.W.2d 681 (1967); *Carter v. Gambulous,* 748 P.2d 1008 (Okla.App.1987); *Glick v. Prince Italian Foods of Saugus, Inc.,* 25 Mass.App. 901, 514 N.E.2d 100 (1987); *Hendricks v. Todora,* 722 S.W.2d 458 (Tex.Ct.App.1986); *Schatz v. 7-Eleven, Inc.,* 128 So.2d 901 (Fla.App.1961); *Watkins v. Davis,* 308 S.W.2d 906 (Tex.Civ.App.1957). Significantly, of these eight decisions, five address the propriety of summary judgments (see *Howe,* 570 A.2d at 1203; *Carpenter,* 512 So.2d at 709; *Glick,* 25 Mass.App. at 901, 514 N.E.2d at 101; *Schatz,* 128 So.2d at 902; *Hendricks,* 722 S.W.2d at 459), and two address the propriety of jury verdicts (see *Mack,* 276 Minn. at 420-21, 150 N.W.2d at 684-85; *Watkins,* 308 S.W.2d at 907). Moreover, to the extent these decisions create no-duty exemptions, they provide no reasons for doing so beyond those we have already rejected above.

## CONCLUSION

For the reasons expressed above, we hold that the allegations in plaintiff's complaint are sufficient to establish that defendants owed a duty of care to the decedent. Accordingly, we affirm the judgment of the appellate court, which reversed the circuit court's dismissal of plaintiff's complaint and remanded the cause for further proceedings.

*Appellate court judgment affirmed.*

Chief Justice THOMAS and Justices FITZGERALD , KILBRIDE, and KARMEIER concurred in the judgment and opinion.
Justice McMORROW dissented, with opinion, joined by Justice FREEMAN.
Justice McMORROW, dissenting:

Plaintiff, Detroy **Marshall**, Jr., as administrator of the estate of the decedent, Detroy **Marshall** III, filed a complaint in the circuit court of Winnebago County alleging that the defendants, **Burger King** Corporation, and Davekiz, Inc., negligently caused the death of the decedent. According to the complaint, the decedent was sitting in the dining room of the defendants' restaurant when a third person, Pamela Fritz, "attempted to exit said restaurant in her vehicle, backed into a lamp pole in the parking lot of the restaurant, and drove forward from the lamp pole, hit the sidewalk adjacent to said **Burger King** Restaurant, causing her vehicle to become air born [*sic*] and crash into the north wall and windows of the restaurant building, trapping the Plaintiff's Decedent, DETROY **MARSHALL**, III, under the vehicle and over a half wall of the north wall of the restaurant."

The complaint alleged that defendants failed to "use due care in the design, construction, and maintenance of the building, parking lot and sidewalk involved in this occurrence" and, specifically, that defendants "[f]ailed to place vertical concrete pillars or poles in the sidewalk by the entrance of said restaurant" when defendants knew or should have known that these precautions "would have prevented the vehicle driven by Pamela H. Fritz" from causing the decedent's injuries. The complaint alleged that "as a direct and proximate result" of defendants' negligent acts or omissions, Pamela Fritz's vehicle crashed into the restaurant and fatally injured the decedent.

Defendants filed a motion to dismiss plaintiff's complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2002)). The circuit court granted the motion. The court stated:
"I have attempted to undertake a duty analysis. This was largely done by comparing the likelihood of this type of occurrence against the burden of protecting against it.
As the court stated in [*Simmons v. Aldi-Brenner Co.,* 162 Ill.App.3d 238, 244, 113 Ill.Dec. 594, 515 N.E.2d 403 (1987) ], 'anything is foreseeable …' but the likelihood of this scenario is so minor that to guard against it in the manner suggested would require fortifying every building within striking distance of any crazed or incredibly inept driver, and the result would be to require foregoing [*sic*] any hope of aesthetically pleasing or business-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

enticing buildings. Obviously these two factors are less important than the safety of invitees, but the Court is required to do a balancing test and in doing so, I find that the duty stated by the plaintiffs is too high in this instance."

The appellate court, with one justice dissenting, reversed. 355 Ill.App.3d 685, 291 Ill.Dec. 805, 824 N.E.2d 661. While recognizing the "relevant [sic] rarity" of incidents such as the one at issue here, the appellate court nevertheless held that under *Ray v. Cock Robin, Inc.,* 57 Ill.2d 19, 310 N.E.2d 9 (1974), and *Marquardt v. Cernocky,* 18 Ill.App.2d 135, 151 N.E.2d 109 (1958), plaintiff's complaint alleged a duty owed by defendants to the decedent. 355 Ill.App.3d at 689, 291 Ill.Dec. 805, 824 N.E.2d 661. Rejecting the circuit court's duty analysis, the appellate court emphasized that plaintiff's complaint contained allegations that defendants had violated the Building Officials and Code Administrators' building code and had departed from custom and practice in the building industry. 355 Ill.App.3d at 689, 291 Ill.Dec. 805, 824 N.E.2d 661. The appellate court concluded that these allegations created a fact question as to whether defendants' failure to take precautions against out-of-control vehicles was a breach of the duty owed to the decedent. 355 Ill.App.3d at 690, 692, 291 Ill.Dec. 805, 824 N.E.2d 661.

The majority affirms the judgment of the appellate court. Unlike the appellate court, however, the majority does not hold that plaintiff's complaint alleges a duty under *Ray* or *Marquardt.* According to the majority, these decisions are inapposite. See 222 Ill.2d at 434-35, --- Ill.Dec. at ---- - ----, --- N.E.2d at ---- - ----. Moreover, the majority does not discuss plaintiff's allegations that defendants violated building code standards and expressly declines to address the possibility that plaintiff's complaint alleges a duty under theories of negligent design or construction (see 222 Ill.2d at 432-33, 449-50, --- Ill.Dec. at ---- - ----, ----, --- N.E.2d at - --- - ----, ----).

Instead, relying on *Hills v. Bridgeview Little League Ass'n,* 195 Ill.2d 210, 253 Ill.Dec. 632, 745 N.E.2d 1166 (2000), the majority holds that the circuit court erred in dismissing plaintiff's complaint because defendants owed an affirmative duty to the decedent to protect him from the negligent driving of Pamela Fritz. The majority reasons that the duty to protect

arose in this case because defendants and the decedent stood in the special relationship of business invitor and invitee. As the majority explains, "the duty of care that arises from the business invitor-invitee relationship encompasses the type of risk-*i.e.,* the negligent act of a third person-that led to the decedent's injuries." 222 Ill.2d at 440, --- Ill.Dec. at ----, --- N.E.2d at ----; see also 222 Ill.2d at 437, --- Ill.Dec. at ----, --- N.E.2d at ---- ("the special relationship between a business invitor and invitee does indeed give rise to a duty of reasonable care that is applicable to this case"). Thus, the majority holds that plaintiff's complaint adequately alleges a duty to protect owed by defendants to the decedent. 222 Ill.2d at 439-40, --- Ill.Dec. at ---- - - ---, --- N.E.2d at ---- - ----.

After holding that the special relationship in this case imposed an affirmative duty on defendants to protect the decedent from a third person's negligence, the majority then states that this conclusion "does not end our inquiry into the duty issue." 222 Ill.2d at 441, --- Ill.Dec. at ----, --- N.E.2d at ----. The majority goes on to consider whether defendants have shown that they are entitled to an "exemption" from the duty of protection owed to the decedent. Addressing this question, the majority examines "the four factors this court traditionally considers in its duty analysis," *i.e.,* the foreseeability of the accident, the likelihood of injury occurring as a result of the accident, the magnitude of the burden to guard against it, and the consequences of imposing that burden. 222 Ill.2d at 441-43, --- Ill.Dec. at ---- - ----, --- N.E.2d at ---- - ----. The majority concludes that defendants have failed to rebut the existence of the duty to protect owed to the decedent and that "the factors relied on by defendants do not support the creation of an exemption from that duty." 222 Ill.2d at 437, --- Ill.Dec. at ----, --- N.E.2d at ----.

While the majority states that it is relying on the rationale of *Hills* for its duty analysis,FN1 the majority opinion departs significantly from that decision. In *Hills* we stated:
"The common law recognizes an exception to the rule that a landholder owes no duty to protect entrants from criminal attacks where the landholder and the entrant stand in a special relationship with each other that warrants imposing such a duty. [Citations.] The existence of a special relationship does not, by itself, impose a duty upon the possessor

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
(Cite as: --- N.E.2d ----)

of land to protect lawful entrants from the criminal attacks of third parties. Before a duty to protect will be imposed it must also be shown that the criminal attack was reasonably foreseeable. [Citation.] In addition, whether a duty to protect exists will depend upon a 'consideration of the likelihood of injury, the magnitude of the burden to guard against it, and the consequences of placing that burden upon the defendant.' [Citation.]" *Hills,* 195 Ill.2d at 243, 253 Ill.Dec. 632, 745 N.E.2d 1166.

*Hills* holds that a special relationship, by itself, is not enough to establish an affirmative duty to protect. Other considerations must be taken into account as well. The majority here, however, holds the opposite. According to the majority, a special relationship, standing alone, is sufficient to establish the affirmative duty to protect a business invitee from the tortious misconduct of a third person. See 222 Ill.2d at 440-41, --- Ill.Dec. at ---- - ----, --- N.E.2d at ---- - ----. *Hills* also expressly holds, in conformance with long-standing case law, that a court must examine the traditional duty factors *before* it may impose an affirmative duty to protect on a defendant. In this case, the majority considers the factors, but only *after* concluding that an affirmative duty exists and only as part of a new, "exemption" analysis.FN2 This is a substantial departure from *Hills.*

The doctrine of "*stare decisis* is not an inexorable command." *Vitro v. Mihelcic,* 209 Ill.2d 76, 82, 282 Ill.Dec. 335, 806 N.E.2d 632 (2004). It does require, however, that the court offer appropriate justification for the reversal of previous decisions. *Vitro,* 209 Ill.2d at 82, 282 Ill.Dec. 335, 806 N.E.2d 632. The majority in this case fails to explain why it is overruling the framework set out in *Hills* for analyzing affirmative duties to protect. In my view, this is error.

The overruling of *Hills* and the creation of a new framework for analyzing the affirmative duty to protect are not the only troubling aspects of the majority opinion. Of equal concern is the majority's "exemption" analysis and its application of the four traditional duty factors.

The majority first holds that foreseeability exists in this case as a matter of law.FN3 The majority states: "it is reasonably foreseeable, given the pervasiveness of automobiles, roadways, and parking lots, that business invitees will, from time to time, be placed at risk by automobile-related accidents." 222 Ill.2d at 442, --- Ill.Dec. at ----, --- N.E.2d at ----. The majority cites two cases to support this conclusion, one from California, *Bigbee v. Pacific Telephone & Telegraph Co.,* 34 Cal.3d 49, 57-58, 665 P.2d 947, 952, 192 Cal.Rptr. 857, 862 (1983), and one from this court, *Blue v. St. Clair Country Club,* 7 Ill.2d 359, 131 N.E.2d 31 (1955). The majority's reliance on these cases is misplaced because both are clearly distinguishable from the case at bar.

In *Blue,* a patron at a country club was injured when an outdoor table umbrella was caught by a gust of wind, knocking the table against the patron. On appeal, the question was whether the evidence, which included testimony that the table umbrellas were frequently blown over by the wind, supported a finding of foreseeability. *Blue,* 7 Ill.2d at 362-65, 131 N.E.2d 31. *Blue* says nothing about the foreseeability of automobile accidents and nothing about the foreseeability of third-party misconduct.

*Bigbee* is similarly unhelpful. In *Bigbee,* the plaintiff was injured when the telephone booth in which he was standing, located approximately 15 feet from a six-lane roadway, was struck by an automobile driven by a drunken driver. The plaintiff filed a complaint against the telephone company, alleging that the company had negligently placed the telephone booth too close to a major thoroughfare where " 'traffic ... travelling easterly, generally and habitually speeded in excess of the posted speed limit,' thereby creating an unreasonable risk of harm to anyone who used the telephone booth." *Bigbee,* 34 Cal.3d at 53, 665 P.2d at 948, 192 Cal.Rptr. at 858. Summary judgment was granted in favor of the telephone company.

On appeal, the sole issue was whether foreseeability remained a question of fact for the jury under the evidence presented. *Bigbee,* 34 Cal.3d at 52, 665 P.2d at 948, 192 Cal.Rptr. at 858. Addressing this question, the court noted that there was evidence which showed that a telephone booth at the same location had previously been struck. *Bigbee,* 34 Cal.3d at 54-55, 58, 665 P.2d at 949, 952, 192 Cal.Rptr. at 859, 862. In addition, the court noted that "[s]wift traffic on a major thoroughfare late at night" was to be expected, as were intoxicated drivers. *Bigbee,* 34 Cal.3d at 58, 665 P.2d at 952,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

192 Cal.Rptr. at 862. Further, the court concluded that "it is not uncommon for speeding and/or intoxicated drivers to lose control of their cars and crash into poles, buildings or whatever else may be standing alongside the road they travel-no matter how straight and level that road may be." *Bigbee,* 34 Cal.3d at 58, 665 P.2d at 952, 192 Cal.Rptr. at 862. Based on these considerations, the court held that foreseeability remained a question of fact for the jury and that summary judgment had been improperly granted.

In this case, unlike *Bigbee,* there are no allegations of prior incidents of negligent driving similar to the one which caused the decedent's injuries. Moreover, the accident in this case involved a building, not a telephone booth, and it happened next to a parking lot, not next to a heavily traveled thoroughfare where cars regularly travel in excess of the speed limit. Further, the court in *Bigbee* held only that foreseeability remained a question for the jury under the particular facts presented, not, as the majority holds here, that automobile-related accidents are foreseeable as a matter of law.

*Bigbee* and *Blue* do not address the foreseeability of parking lot accidents such as the one at issue here. Numerous other cases, however, do. The majority of these cases, while recognizing that the duty to protect is part of the general duty of care owed to business invitees, also recognize that landowners are not the insurers of their invitees' safety. These cases hold that landowners are liable for injuries caused by third-party misconduct only when that misconduct is reasonably foreseeable and, further, that automobile-related accidents such as the one that occurred in this case are not foreseeable as a matter of law. A representative case adopting this position is *Albert v. Hsu,* 602 So.2d 895 (Ala.1992)
.

In *Albert,* a driver backed her car across the parking lot from a parking space, over a six-inch curb, across a sidewalk, and through the wall of a Chinese restaurant. A 10-year-old girl seated inside the restaurant was struck and killed. The girl's mother sued the owners of the restaurant, alleging that the restaurant building was negligently designed and that the restaurant owners should have erected barricades around the building. There was no evidence of any similar prior incidents and the premises were constructed in accordance with the

relevant building code requirements. Summary judgment was granted in favor of the owners.

On appeal, the Supreme Court of Alabama affirmed. In so holding, the court noted the majority view regarding the legal foreseeability of out-of-control automobiles penetrating buildings and striking business invitees:

" 'We are not unmindful of the obvious fact that at times operators lose control over the forward progress and direction of their vehicles either through negligence or as a result of defective mechanisms, which sometimes results in damage or injury to others. In a sense all such occurrences are foreseeable. They are not, however, incidents to ordinary operation of vehicles, and do not happen in the ordinary and normal course of events. When they happen, the consequences resulting therefrom are matters of chance and speculation. If as a matter of law such occurrences are held to be foreseeable and therefore to be guarded against, there would be no limitation on the duty owed by the owners of establishments into which people are invited to enter. Such occurrences fall within the category of the unusual or extraordinary, and are therefore unforeseeable in contemplation of the law.' " *Albert,* 602 So.2d at 898, quoting *Schatz v. 7-Eleven, Inc.,* 128 So.2d 901, 904 (Fla.App.1961).

Adhering to this view, the court concluded that "[i]nsofar as foreseeability is an element of duty, any foreseeability inferred from the facts of this case is too remote to give rise to a duty owed and breached." *Albert,* 602 So.2d at 897. Accordingly, the court concluded that the restaurant owners owed no duty to the decedent and affirmed the lower court.

Like the court in *Albert,* a majority of courts throughout the country have concluded that landowners are not liable for injuries caused to business invitees by out-of-control drivers under facts similar to this case, because such incidents are unforeseeable as a matter of law. See, *e.g., Simmons v. Aldi-Brenner Co.,* 162 Ill.App.3d 238, 244, 113 Ill.Dec. 594, 515 N.E.2d 403 (1987); *Stutz v. Kamm,* 204 Ill.App.3d 898, 906, 149 Ill.Dec. 935, 562 N.E.2d 399 (1990); *Sotomayor v. TAMA I, LLC,* 274 Ga.App. 323, 327, 617 S.E.2d 606, 610 (2005); *Heard v. Intervest Corp.,* 856 So.2d 359, 362 (Miss.App.2003); *Jefferson v. Qwik Korner Market, Inc.,* 28 Cal.App.4th 990, 996-97, 34

Cal.Rptr.2d 171, 174-75 (1994); *Fawley v. Martin's Supermarkets, Inc.,* 618 N.E.2d 10, 13 (Ind.App.1993); *Carpenter v. Stop-N-Go Markets of Georgia, Inc.,* 512 So.2d 708, 709 (Miss.1987); *Grandy v. Bavaro,* 134 A.D.2d 957, 958, 521 N.Y.S.2d 956, 957 (1987); *Hendricks v. Todora,* 722 S.W.2d 458, 460-62 (Tex.App.1986); *Krispy Kreme Doughnut Co. v. Cornett,* 312 So.2d 771, 772-73 (Fla.App.1975); *Nicholson v. MGM Corp.,* 555 P.2d 39, 41 (Alaska 1976); *Eckerd-Walton, Inc. v. Adams,* 126 Ga.App. 210, 213, 190 S.E.2d 490, 492 (1972); *Mack v. McGrath,* 276 Minn. 419, 427, 150 N.W.2d 681, 686 (1967); *Schatz v. 7-Eleven, Inc.,* 128 So.2d 901, 904 (Fla.App.1961); *Watkins v. Davis,* 308 S.W.2d 906, 909 (Tex.Civ.App.1957).

In contrast to the foregoing, a minority of cases have affirmed lower court findings of foreseeability, or have held that foreseeability is a question of fact for the jury, in cases involving business invitees and automobile-related accidents. However, the facts of these cases differ significantly from those present here. For example, it has been held that foreseeability is a question of fact for the jury where there were prior similar incidents involving automobiles and, thus, the landowner had notice of the potential for automobile-related accidents. See, *e.g., Ray v. Cock Robin, Inc.,* 57 Ill.2d 19, 23, 310 N.E.2d 9 (1974); FN4 *Dalmo Sales of Wheaton, Inc. v. Steinberg,* 43 Md.App. 659, 666-67, 407 A.2d 339, 343 (1979). In addition, it has been held that foreseeability is a question of fact for the jury where the landowner's own conduct contributed to the risk of harm to the plaintiff, either because the landowner failed to provide any protection from encroaching vehicles whatsoever (see, *e.g., Dalmo,* 43 Md.App. at 663, 407 A.2d at 341 (absence of any barrier was "critical fact")), or because the landowner required patrons to stand at a service window next to a parking lot or driveway (see, *e.g., Barker v. Wah Low,* 19 Cal.App.3d 710, 711, 721, 97 Cal.Rptr. 85, 85, 92 (1971)). See generally *Qwik Korner Market,* 28 Cal.App.4th at 995, 34 Cal.Rptr.2d at 174 (listing cases in these categories). None of these situations are present here.

Citing to several of the decisions noted above which held that the automobile accidents were unforeseeable, defendants contend that the accident at issue in this case was unforeseeable as a matter of law. The majority, however, disagrees and rejects the cases cited by defendants. According to the majority, the cases upon which defendants rely on are unpersuasive, primarily because most of them address the issue of foreseeability within the context of deciding the correctness of a summary judgment or jury verdict, rather than, as in this case, the dismissal of a complaint. See 222 Ill.2d at 440, --- Ill.Dec. at ----, --- N.E.2d at ----. In addition, the majority states that "to the extent these decisions create no-duty exemptions, they provide no reasons for doing so beyond those we have already rejected above." 222 Ill.2d at 450, --- Ill.Dec. at ----, --- N.E.2d at ----. This is an inadequate basis for setting defendants' cases aside.

The two decisions relied upon by the majority in its foreseeability analysis, *Bigbee* and *Blue,* concerned, respectively, the propriety of a summary judgment ( *Bigbee,* 34 Cal.3d at 52, 665 P.2d at 948, 192 Cal.Rptr. at 858), and the correctness of a jury verdict (*Blue,* 7 Ill.2d at 361, 366, 131 N.E.2d 31). Thus, at the same time the majority rejects cases cited by defendants because those decisions address the correctness of summary judgments or jury verdicts, the majority cites to, and relies upon, cases which do the same thing. This treatment of the cases is inconsistent. If *Bigbee* and *Blue* may be relied upon by the court despite their procedural postures, then the cases cited by defendants should not be rejected because of theirs. Further, the majority's summary dismissal of the entire line of authority relied upon by defendants is unpersuasive, particularly since the cases relied upon by the majority, *Bigbee* and *Blue,* are distinguishable on their facts.

The majority opinion is at odds with the clear weight of authority with respect to legal foreseeability. Moreover, because of the nature of the duty being imposed in this case, the majority's resolution of the foreseeability issue raises significant public policy concerns.

As noted by the majority, negligent design and construction are not part of its duty analysis. That is, in its duty analysis, the majority does *not* conclude that defendants' premises were inherently dangerous or that defendants' own conduct created a risk of harm to the decedent through negligently designing or constructing the restaurant. Rather, it was the driver, Pamela Fritz, whose conduct created

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

a risk of harm to the decedent. The alleged duty owed by defendants in this case was to protect the decedent against the risk of harm created by Fritz's driving. Thus, as framed by the majority, this is not a case concerning ordinary duty and negligence. It is, instead, a "pure" affirmative-duty case, so called because when such a duty is imposed, the defendant is compelled to take affirmative action-in this case, to protect the decedent from a third person's misconduct.

By its nature, the affirmative duty to protect implicates important policy concerns because it requires a defendant to take unusual action, *i.e.,* to police the conduct of other people. See Restatement (Third) of Torts: Liability for Physical Harm § 37, Comment *e,* at 714 (Proposed Final Draft No. 1, April 6, 2005) (There is a "distinction between placing limits on conduct and requiring affirmative conduct. This distinction in turn relies on the liberal tradition of individual freedom and autonomy. Liberalism is wary of laws that regulate conduct that does not infringe on the freedom of others"). For this reason, courts have traditionally moved cautiously in this area:
"Judicial reliance on foreseeability under specific facts occurs more frequently and aggressively in cases involving an affirmative duty than in other cases. This suggests that courts more carefully supervise these cases than cases in which the actor's conduct creates a risk of harm. This tendency is even more pronounced in cases in which the alleged duty involves protecting the plaintiff from third parties, especially the criminal acts of third parties. Sometimes, courts develop specific rules or balancing tests about the quantity, quality, and similarity of prior episodes required to satisfy foreseeability." Restatement (Third) of Torts: Liability for Physical Harm § 37, Comment *f,* at 715 (Proposed Final Draft No. 1, April 6, 2005).

See also, *e.g., Posecai v. Wal-Mart Stores, Inc.,* 752 So.2d 762, 766-68 (La.1999) (discussing the various tests courts have applied in deciding the foreseeability of third-party crime); *Dalmo,* 43 Md.App. at 670, 407 A.2d at 345 ("where the injury arises from the negligent or deliberate act of a third party committed on the storekeeper's property but does not involve any defect in the property itself. * * * [E]xcept in rather extreme circumstances, the principles of reasonableness, ordinary care, proximate cause, and foreseeability

have often combined to prevent a recovery").

Like other courts, this court has also taken a narrow view of legal foreseeability when asked to impose a duty upon a landowner to guard against the negligence of others. This is particularly true in cases involving negligent driving. For example, in *Gouge v. Central Illinois Public Service Co.,* 144 Ill.2d 535, 163 Ill.Dec. 842, 582 N.E.2d 108 (1991), a car drove off a road and struck a utility pole, located some 15 feet from the roadway. A transformer attached to the pole collapsed onto the car, severely injuring the driver. *Gouge,* 144 Ill.2d at 539, 163 Ill.Dec. 842, 582 N.E.2d 108. The driver filed a complaint against the power company which owned the pole, alleging that the pole had been negligently located and that the pole should have been installed so that it would fall away from the roadway if struck by a motorist. As in this case, the circuit court dismissed the complaint for failure to state a cause of action. The appellate court, however, reversed the circuit court and reinstated the complaint.

On appeal, this court held that the power company owed no duty to the driver. In so holding, this court noted the long-standing rule that there is no " 'general duty to anticipate and guard against the negligence of others' " because the imposition of such a duty " 'would place an intolerable burden on society.' " *Gouge,* 144 Ill.2d at 547, 163 Ill.Dec. 842, 582 N.E.2d 108, quoting *Dunn v. Baltimore & Ohio R.R. Co.,* 127 Ill.2d 350, 366, 130 Ill.Dec. 409, 537 N.E.2d 738 (1989). This court further noted that, while it is common knowledge that vehicles on occasion leave roadways and strike objects adjacent to roadways, " 'there must be reasonable anticipation of such deviation from the roadway as a normal incident of travel' " before a duty to guard against such negligence will be imposed. *Gouge,* 144 Ill.2d at 545, 163 Ill.Dec. 842, 582 N.E.2d 108, quoting *Boylan v. Martindale,* 103 Ill.App.3d 335, 346, 59 Ill.Dec. 43, 431 N.E.2d 62 (1982). We observed that plaintiffs had "alleged no facts in their complaint, nor are any facts apparent, which would indicate that it was reasonably foreseeable" that the driver would deviate from the roadway and strike the utility pole. *Gouge,* 144 Ill.2d at 545, 163 Ill.Dec. 842, 582 N.E.2d 108. Accordingly, because "it is not reasonably foreseeable that a motorist will leave the traveled portion of a roadway and strike a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

particular utility pole" (*Gouge,* 144 Ill.2d at 546, 163 Ill.Dec. 842, 582 N.E.2d 108), this court concluded that the power company owed no duty to the driver and reversed the appellate court.

Another representative case is *Ziemba v. Mierzwa,* 142 Ill.2d 42, 153 Ill.Dec. 259, 566 N.E.2d 1365 (1991). In *Ziemba,* a cyclist on a roadway was injured when a dump-truck driver negligently exited the driveway of a landowner. The driveway was obscured by foliage and was not visible from the road. The cyclist filed a complaint against the landowner, alleging that the landowner had failed to use " 'reasonable care in the conduct of activities on his property, so as not to cause damage or injury to persons on the adjacent roadway.' " *Ziemba,* 142 Ill.2d at 46, 153 Ill.Dec. 259, 566 N.E.2d 1365. The landowner filed a section 2-615 motion to dismiss, which was granted by the circuit court. The appellate court reversed.

On appeal, this court reversed the appellate court. Initially, this court noted that, to determine if the landowner's property was unreasonably dangerous to the cyclist, it was necessary to consider whether it was reasonably foreseeable that the condition of the property would result in the type of accident that occurred. As in this case, the court observed that the condition of the landowner's property was not, by itself, dangerous to the cyclist. Rather, it only posed a danger to the cyclist "by operation of the driver's intervening negligent act" of exiting the driveway without warning and without yielding the right-of-way. *Ziemba,* 142 Ill.2d at 50, 153 Ill.Dec. 259, 566 N.E.2d 1365. This court also noted that a property owner generally cannot control and has no right to control the drivers of vehicles and, further, that a property owner has a right to expect drivers to look before they back out of driveways. *Ziemba,* 142 Ill.2d at 52, 153 Ill.Dec. 259, 566 N.E.2d 1365, quoting *Zimmermann v. Netemeyer,* 122 Ill.App.3d 1042, 1054, 78 Ill.Dec. 383, 462 N.E.2d 502 (1984), quoting *Safeway Stores, Inc. v. Musfelt,* 349 P.2d 756, 758 (Okla.1960). This court concluded that, "[b]ecause the condition on defendant's land posed no danger to plaintiff absent the independent, negligent act of the driver," the accident "was not a reasonably foreseeable result of the condition on defendant's land." *Ziemba,* 142 Ill.2d at 52, 153 Ill.Dec. 259, 566 N.E.2d 1365.

As in *Gouge,* this court in *Ziemba* stressed that there

is no duty to " 'guard against the negligence of others' " because such a duty " 'would place an intolerable burden on society.' " *Ziemba,* 142 Ill.2d at 52-53, 153 Ill.Dec. 259, 566 N.E.2d 1365, quoting *Dunn,* 127 Ill.2d at 366, 130 Ill.Dec. 409, 537 N.E.2d 738. In addition, this court stated:
"The underlying rationale for holding a landowner liable for injuries occurring as a result of conditions on his land is that the landowner is in the best position to prevent the injury. However, in this case, we find that the truck driver was in the best position to prevent the injury. Thus the usual justification for imposing landowner liability is not present in this case." *Ziemba,* 142 Ill.2d at 53, 153 Ill.Dec. 259, 566 N.E.2d 1365.

Given these considerations, the court in *Ziemba* concluded that the landowner owed no duty to the cyclist and reversed the appellate court.

The majority in this case does not acknowledge the traditional, narrow view of legal foreseeability that this court has employed when asked to impose a duty upon a landowner to guard against the misconduct of others. Indeed, while most courts have exercised caution in this area of the law, allowing foreseeability of third-party misconduct to remain a question of fact for the jury only under specific tests or circumstances, the majority in this case goes in the opposite direction. The majority does not adopt a case-by-case approach and hold only that, in this particular case, plaintiff has alleged sufficient facts regarding foreseeability to survive dismissal. *Cf. Bigbee,* 34 Cal.3d at 52, 665 P.2d at 948, 192 Cal.Rptr. at 858 (stating that the sole question presented was whether, under the evidence presented, "foreseeability remains a question of fact for the jury"). Instead, the majority adopts a categorical approach and holds that it is foreseeable, as a matter of law and without limitation, that automobile-related accidents will place business invitees at risk of harm. 222 Ill.2d at 442, --- Ill.Dec. at ----, --- N.E.2d at ----. Of course, if it is categorically foreseeable that negligently driven automobiles will place business invitees at risk of harm, then it is categorically unreasonable for landowners to fail to take action to protect invitees from that risk. In this way, the majority is holding all landowners with property abutting roads or parking lots to be the insurers of their business invitees' safety. This broad holding is unwarranted and, in my view, erroneous.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The second traditional duty factor that the majority considers is the likelihood of injury resulting from accidents such as the one that occurred in this case. The majority concludes that it "is quite high, as even a cursory glance at a selection of the cases the parties have cited to us demonstrates." 222 Ill.2d at 442, --- Ill.Dec. at ----, --- N.E.2d at ----. Although I agree that, in general, there is a likelihood of injury when an automobile is negligently driven onto premises open to the public, I note that the sample of cases cited by the majority is self-selecting. That is, these cases would not be in the court system in the first place if the accident had not resulted in injury. It is possible, of course, that there may be instances when an automobile driven onto business premises may not cause injury. The likelihood of injury will depend on the type of business and vehicle involved, the time of day the accident occurs, and other factors. That said, I certainly agree that, in general, there is a likelihood of injury when an automobile is negligently driven onto premises open to the public.

With respect to the third traditional duty factor, defendants contend that the imposition of a duty to protect in this case would impose an unreasonable burden on themselves and other similarly situated businesses. Citing to *Simmons v. Aldi-Brenner Co.,* 162 Ill.App.3d 238, 113 Ill.Dec. 594, 515 N.E.2d 403 (1987), defendants argue that "protecting every storefront business and every store adjoining a parking lot with the necessary barriers to stop any vehicle from being driven into the building would be a gargantuan task." Further, according to defendants, "one could never be certain whether the protection would be sufficient to stop every vehicle," including trucks and SUVs, from crashing through the building. Thus, defendants maintain that the burden imposed in this case is unreasonable.

Defendants' position is supported by a number of cases. One court has observed:
"Imposing a duty on a convenience store to protect a customer from every imaginable incident is an unreasonable burden: a motorcycle can pass between metal posts and a large truck can break through a cement wall. Only an impregnable barrier would suffice, in essence holding the store owner as the insurer of its customers' safety. The law does not impose such a burden." *Qwik Korner Market,* 28 Cal.App.4th at 996, 34 Cal.Rptr.2d at 175.

Similarly, another court has stated:" 'To erect an impregnable barrier around all of the buildings would both obstruct normal pedestrian traffic and impose on the owners a burden completely out of proportion to the anticipated risk. We agree that liability cannot be predicated on the fact that out of the many thousands of vehicles which use parking areas in a normal way, one or two may occasionally jump the curb and expose pedestrians as well as tenants to the remote possibility of injury.' " *Albert,* 602 So.2d at 897-98, quoting *Mack v. McGrath,* 276 Minn. 419, 427-28, 150 N.W.2d 681, 686 (1967).

See also *Simmons,* 162 Ill.App.3d at 244, 113 Ill.Dec. 594, 515 N.E.2d 403 (imposing a duty "would place a burden on every store, near a street or parking lot, of constructing barriers adequate to prevent any car from being driven into the building"); *Stutz,* 204 Ill.App.3d at 906, 149 Ill.Dec. 935, 562 N.E.2d 399; *Heard,* 856 So.2d at 362 (if the court were to recognize a duty to protect it "would mean that property owners throughout the state of Mississippi would need to build barriers between their premises and streets and parking lots. This Court simply cannot make that the public policy of this State"); *Fawley,* 618 N.E.2d at 14 ("to require that business owners erect impregnable barriers separating the parking lots from their sidewalks would very likely increase the inconvenience and hazard to pedestrians and impose upon the owners a burden completely out of proportion to the anticipated risk"); *Grandy,* 134 A.D.2d at 958, 521 N.Y.S.2d at 957.

Despite this authority, the majority rejects defendants' burden argument. The majority concludes that defendants' concerns are "speculative at best" and are "based on mistaken assumptions about the nature of a duty of care." 222 Ill.2d at 443, --- Ill.Dec. at ----, --- N.E.2d at ----. According to the majority, defendants' burden argument is of no moment because the court in this case is only holding that defendants owed a duty of care to the decedent and not making a "broad-based declaration of negligence liability." 222 Ill.2d at 443, --- Ill.Dec. at ----, --- N.E.2d at ----. In other words, in the view of the majority, burden concerns arise only when there is a finding of liability, not when a duty is recognized.

The majority's burden analysis is at odds with case

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
(Cite as: --- N.E.2d ----)

law. This court has frequently discussed the burdens placed upon a defendant in cases addressing solely whether a duty exists. See, *e.g., City of Chicago v. Beretta U.S.A. Corp.,* 213 Ill.2d 351, 393, 290 Ill.Dec. 525, 821 N.E.2d 1099 (2004) (deciding the propriety of a judgment dismissing a complaint under section 2-615 and concluding that "the magnitude of the burden that plaintiffs seek to impose on the manufacturer and distributor defendants by altering their business practices is immense"); *Gouge,* 144 Ill.2d at 547-48, 163 Ill.Dec. 842, 582 N.E.2d 108 (discussing costs and burdens of imposing a duty). Further, it is inconsistent for the majority to address foreseeability and the likelihood of injury in deciding whether to recognize a duty in this case and, at the same time, not address the burdens that result from imposing that duty.

Later in its opinion the majority provides another answer to defendants' burden argument. Rejecting defendants' contentions regarding duty, the majority states that this case is not about "whether defendants had a duty to install protective poles, or a duty to prevent a car from entering the restaurant, or some such other fact-specific formulation" but, instead, is only about recognizing "a duty of reasonable care" to protect business invitees. 222 Ill.2d at 443, --- Ill.Dec. at ----, --- N.E.2d at ----. This reasoning is unpersuasive.

The duty imposed by the majority necessarily encompasses the duty to provide protective barriers. Neither party to this appeal has suggested any means of protecting business invitees from out-of-control automobiles other than protective poles or some other type of barrier. Indeed, plaintiff's primary allegation of negligence in this case is that defendants failed to install such barriers. As plaintiff alleged in his complaint:
"a. [Defendants] [f]ailed to place vertical concrete pillars or poles in the sidewalk by the entrance of said restaurant, which vertical pillars or poles would have prevented the vehicle * * * from becoming air born [*sic*] and coming to rest over the brick half wall, when the Defendant[s] knew or should have known that failing to put concrete pillars or poles in the sidewalk by the entrance to the restaurant would allow a vehicle to become air born [*sic*] when driven over the sidewalk, thereby causing the vehicle to come down on top of the brick half wall * * *."

The majority holds that all landowners owe a duty of reasonable care to their business invitees which includes the affirmative duty to protect the invitees from the risk of negligently driven automobiles. See, *e.g.,* 222 Ill.2d at 442, --- Ill.Dec. at ----, --- N.E.2d at ---- (declining to find an exemption from the "duty to protect invitees against out-of-control drivers"). This affirmative duty to protect necessarily applies in this case-where an automobile penetrated a building. The only way that a landowner can protect an invitee from an automobile penetrating its building is either by relocating the business away from all roads and parking lots or, more plausibly, by constructing an impenetrable barrier around the building. This is precisely the burden that other courts have recognized to be at issue in cases such as this and, as noted, have found to be unreasonable.

Finally, the majority does not address the substantial consequences of its decision to impose a duty here. Every business open to the public that abuts a road or parking lot now has an unqualified duty to protect business invitees from out-of-control drivers. This is an unprecedented expansion of premises liability. See, *e.g., Beretta U.S.A. Corp.,* 213 Ill.2d at 393, 290 Ill.Dec. 525, 821 N.E.2d 1099 (declining to impose a duty upon commercial enterprises to guard against the criminal misuse of their products by others in part because such a duty would be an "unprecedented expansion of the law of public nuisance"). Further, barriers which make it impossible for vehicles to enter a building also make it more difficult for invitees to get out of a building during a fire or other emergency. *Heard,* 856 So.2d at 362. Thus, while the justification given for imposing a duty to protect in cases such as this is to improve the safety of business invitees, the recognition of such a duty may, on balance, have the opposite effect.

The majority is correct to observe that courts should be cautious when holding that no duty exists. See 222 Ill.2d at 441-42, --- Ill.Dec. at ----, ---N.E.2d at ----. But the affirmative duty to protect is itself an exception to the general rule that one owes no duty to police the conduct of other people. Further, consider the nature of the majority's holding in this case. According to the majority, a duty to protect a business invitee from the negligent driving of a third person exists where: the landowner's property is *not* inherently dangerous or defective and the

landowner's own conduct has *not* created any risk of harm to the invitee through negligent design or construction; the landowner has complied with all applicable building codes and safety regulations; the landowner has experienced no previous incidents of any sort involving automobile-related accidents, whether similar or not; the parking lot is unremarkable, a sidewalk is present, and the invitee is inside a building behind a half-brick wall; and the only means of protecting the invitee from the negligent driving is to construct an impregnable barrier around the building that, even if possible to construct, may have a negative effect on the safety of business invitees in other circumstances. If there is an affirmative duty to protect a business invitee from out-of-control vehicles on these facts, then such a duty exists for every business which owns a building that abuts a road or parking lot.

The majority's holding is exceptionally broad and has the potential to alter substantially the function and appearance of every city in the state. With its far-reaching implications, I do not believe that the adoption of the duty of protect, as described by the majority, is an appropriate undertaking for this court. I would hold, in accordance with the weight of authority, that no affirmative duty to protect exists on these facts. Accordingly, I dissent.

Justice FREEMAN joins in this dissent.

FN1. Although the issue in *Hills* involved a landholder's liability for the criminal conduct of a third person, the majority concludes that the rationale of *Hills* applies "with equal force where, as here, the negligent act of a third person is at issue." 222 Ill.2d at 439, ---Ill.Dec. at ----, --- N.E.2d at ---- -.

FN2. Contrary to the majority's assertions, defendants at no time ask this court "to create an exemption from the duty of care that stems from the special relationship between a business invitor and invitee." 222 Ill.2d at 441, --- Ill.Dec. at ----, --- N.E.2d at ----. Rather, in accord with existing case law, defendants argue that "the four factors this court traditionally considers in its duty analysis" (222 Ill.2d at 441, ---Ill.Dec. at ----, --- N.E.2d at ----) must be addressed before an affirmative duty may be imposed.

FN3. Contemporary tort scholarship, including the

proposed Restatement (Third) of Torts, takes the position that foreseeability should not play any part in the ordinary duty, or affirmative duty analysis. See Restatement (Third) of Torts: Liability for Physical Harm § 7, Comment *j*, at 97-98, § 37, Comment *f*, at 715 (Proposed Final Draft No. 1, April 6, 2005); see also W. Cardi, *Purging Foreseeability: The New Vision of Duty and Judicial Power in the Proposed Restatement (Third) of Torts,* 58 Vand. L.Rev. 739 (2005). The majority does not adopt this position, which would be a departure from our case law, and I express no opinion on its merits.

FN4. The majority distinguishes *Ray* on the basis that the case addressed foreseeability as a matter of proximate cause, rather than duty. See 222 Ill.2d at 434-35, --- Ill.Dec. at ---- - ----, --- N.E.2d at ---- - ----. However, whether couched in terms of duty or proximate cause, the determinative issue for courts to decide with respect to foreseeability in cases such as this is whether it may be said that foreseeability does not exist as a matter of law. See, *e.g., Bigbee,* 34 Cal.3d at 55-56, 665 P.2d at 950, 192 Cal.Rptr. at 860 (defendants' contentions that they owed no duty and that there was no proximate cause presented "the same issue in different guises," *i.e.,* whether the risk was unforeseeable as a matter of law). Nevertheless, as noted in the text, *Ray* is distinguishable on its facts.

Ill.,2006.
Marshall v. Burger King Corp.
--- N.E.2d ----, 222 Ill.2d 422, 2006 WL 1703488 (Ill.)

Briefs and Other Related Documents (Back to top)

. 2006 WL 3223940 (Appellate Petition, Motion and Filing) Petition for Rehearing Pursuant to Supreme Court Rule 367 Davekiz, Inc. and Burger King Corporation (Jul. 13, 2006)
. 2005 WL 4889090 (Appellate Brief) Brief Amicus Curiae of Pacific Legal Foundation in Support of Defendants-Appellants (Aug. 31, 2005)
. 2005 WL 4889091 (Appellate Brief) Reply Brief of Appellants Davekiz, Inc. and Burger King Corporation (Aug. 17, 2005)
. 2005 WL 4889092 (Appellate Brief) Amicus Curiae Brief of Illinois Trial Lawyers Association in Support of Plaintiff-Appellee (Aug. 1, 2005)
. 2005 WL 4889093 (Appellate Brief) Brief and Argument of Plaintiff-Appellee (Aug. 1, 2005)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- N.E.2d ----
**(Cite as: --- N.E.2d ----)**

. 2005 WL 4889094 (Appellate Brief) Amicus
Curiae Brief of the Illinois Association of Defense
Trial Counsel in Support of Defendants-Appellants
(Jul. 13, 2005)
. 2005 WL 4889095 (Appellate Brief) Brief of
Appellants Davekiz, Inc. and Burger King
Corporation (Jun. 29, 2005)
. 2005 WL 4889096 (Appellate Brief) Plaintiff-
Respondent's Answer to Petition for Leave to
Appeal (Apr. 20, 2005)
. 2005 WL 4883262 (Appellate Petition, Motion
and Filing) Petition for Leave to Appeal Davekiz,
Inc. and Burger King Corporation (Apr. 7, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.