UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GAIL EUGENE PHILLIPS-WATERS, ) <br> (Individually and as Personal Representative ) <br> of the Estate of JAMES LEON WATERS, deceased), ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MARRIOTT INTERNATIONAL, INC., et al., ) <br> ) <br> Defendants. ) | Case No. 06-cv-01310 (GK) |

REPLY IN SUPPORT OF MOTION TO DISMISS
OF DEFENDANTS MARRIOTT INTERNATIONAL, INC.
AND RENAISSANCE HOTEL OPERATING COMPANY

Defendants Marriott International, Inc. ("Marriott") and Renaissance Hotel Operating Company ("Renaissance") respectfully submit the following Reply in support of their Motion to Dismiss Plaintiff's Second Amended Complaint ("Complaint").

I.  **INTRODUCTION**

Despite Plaintiff's concession that Defendants' employees called 911, immediately responded to her hotel room, and performed CPR on Mr. Waters until emergency personnel arrived, Plaintiff now claims that Defendants acted with "reckless indifference" toward decedent. Pl. Opp at 2. Plaintiff's Opposition -- no matter how voluminous and inflammatory[1] -- does nothing to change the simple fact that Defendants did <u>not</u> have a duty to have an Automated External Defibrillator ("AED") at the Renaissance Hotel on July 26, 2005.[2] Because Defendants

---

[1] For example, Plaintiff likens Defendants' arguments here to arguments made by those who sought to preserve racial segregation or those who burned "witches" at the stake.  (<u>See</u> Pl. Opp. at 3.)

[2] Plaintiff's Opposition is replete with unsupported factual allegations. Defendants will not respond to each and every such allegation, because these allegations are not germane to the resolution of the current Rule 12 motion. Defendants do not concede that any allegations made in Plaintiff's Opposition and the declaration of counsel are true.

had no such duty – either by statute or at common law – they cannot, as a matter of law, be found negligent for failing to have an AED.

To the extent that Plaintiff also alleges that Defendants failed to train their employees on the proper use of AEDs, that claim fails for the same reasons that Defendants had no duty to have an AED. Similarly, to the extent Plaintiff claims that Defendants failed to properly train their employees in first aid techniques, this contention is effectively refuted by Plaintiff's own admission that Defendants' employees performed CPR on Mr. Waters until D.C. Fire and Emergency Services ("FEMS") personnel arrived. (Comp. ¶¶ 20-21.) No more is required under the very authority relied on by Plaintiff. To the extent Plaintiff contends that Defendants were negligent in failing to provide working radios, this claim fails because Plaintiff does not allege that, but for the alleged failure to provide working radios, it was more likely than not that Mr. Waters would have survived. Thus, each of Plaintiff's claims fails as a matter of law. Accordingly, Defendants Motion to Dismiss should be granted.

## II. NOTHING IN PLAINTIFF'S OPPOSITION REFUTES DEFENDANTS' CENTRAL POINT THAT DISTRICT HOTELS HAD NO STATUTORY OR COMMON LAW DUTY TO HAVE AN AED.

Here, Plaintiff does not dispute that she must establish that Defendants owed Mr. Waters a duty of care, Defendants breached that duty, and Defendants' breach proximately caused damages to Plaintiff. See, e.g., Novak v. Capital Management & Development Corp., 452 F.3d 902, 907 (D.C. Cir. 2006). Plaintiff further concedes, as she must, that it is for the Court to determine, as a matter of law, whether Defendants owed Plaintiff a duty and the scope of any such duty. (See, e.g., Pl. Opp. at 10; see also In re Sealed Case, 67 F.3d 965, 968 (D.C. Cir. 1995) (determination of whether a duty existed in a negligence action "is a question of law, to be determined by the court").) Because Plaintiff cannot escape the fact that Defendants had no statutory or common law duty to have an AED at the Hotel on June 26, 2005, she cannot

establish the threshold element of her negligence claim.[3] See Atcovitz v. Gulph Mills Tennis Club, Inc., 812 A.2d 1218, 1222 (Pa. 2002) (question of whether health club had duty to provide an AED is "the threshold element").

### A. Plaintiff's "Cases" Do Not Support Her Argument.

Despite Plaintiff's assertion that the national standard of care "by the year 2000 at least" was to have AEDs in hotels (Pl. Opp. at 4),[4] Plaintiff has not cited one single case in which a Court held that a hotel has a duty to have an AED on its premises.[5] In fact, among the materials Plaintiff cites in support of her position, is an order holding that no such duty exists.[6] (Pl. Opp. at 9; Exh. M to Hagin Decl.) As the Superior Court of California for San Diego County concluded on September 30, 2005, in a similar case brought against Hilton Hotels Corporation, the hotel "***owed no duty to plaintiffs to maintain an automatic external defibrillator ("AED") on its premises***." (Emphasis added.) See Cohen v. Hilton Hotels Corp., Case No. GIC 821664,

---

[3] Further, to the extent Plaintiff now claims Defendants were negligent because they "did not train their employees to be able to identify someone who is in cardiac arrest" and did not provide "operating radios to help emergency services people identify the location . . . of the victim" (Pl. Opp. at 2), these allegations must be disregarded as they are not actually pled in the Complaint.

[4] Plaintiff's assertion is belied by her lawyer's very own (voluminous) attachments which hardly mention hotels, but do address the prospects of sudden cardiac arrest at health clubs. See, e.g., Hagin Decl., Exh. B. Notwithstanding Plaintiff's insistence that AEDs were required by the "national standard of care" by 2000, one of Plaintiff's own exhibits, dated August 10, 2001, begins:

> After significant research [The International Health, Racquet & Sports Club Association] has concluded that there is not a legal standard of care that requires [AEDs] be in all fitness centers.

(Hagin Decl., Exh. B, Attach. H at 1.)

[5] Plaintiff takes Defendants to task for not citing a D.C. case holding that a hotel has a duty to have an AED. (Pl. Opp. at 9.) Defendants noted in their Motion that this specific issue is a matter of first impression in D.C. However, unlike Plaintiffs, Defendants also cited several reported cases from other jurisdictions in which courts have addressed this issue and found no such duty to exist.

[6] By addressing materials referenced in the Hagin Declaration here, Defendants do not concede that the Hagin Declaration or any of its attachments are admissible or properly before this Court. (See infra § III.) Rather, Defendants merely reference this document to demonstrate that Plaintiff's own submissions undermine her argument.

attached to Hagin Decl. as Exh. M, at 2.[7]  Indeed, in an earlier order entered in that same case (which Plaintiff fails to bring to the attention of this Court), the court determined:

> ***Defendant owed no duty to plaintiffs to maintain an automatic external defibrillator on its premises ("AED").***  As an innkeeper, defendant is under a duty to protect guests against unreasonable risk of physical harm and to give them first aid after it knows or has reason to know that they are ill or injured and to care for them until they can be cared for by others.  (Restatement of Torts section 314A)  This duty does not extend to providing medical equipment.  Plaintiffs has not cited to any California authority requiring defendant to have an AED on its premises.
>
> ***If the court were to accept plaintiffs' argument that innkeepers have a duty to carry medical equipment because of the possibility a guest may become ill, innkeepers would thus be required to carry all types of emergency medical equipment for a variety of ailments and diseases <u>and</u> provide personnel trained in the use of such equipment*** simply because defendants are open to guests who may have undisclosed medical problems or who may overexert themselves at social events held on the premises.  ***As a matter of policy, such a duty would impose an undue burden on innkeepers.***

(5/4/04 Order, attached as <u>Exhibit 1</u> hereto; emphasis added.)

Each of the cases Plaintiff cites is readily distinguishable from the present case.  For example, <u>Thompson v. Rochester Community Schools</u>, No. 269738, 2006 WL 3040137 (Mich. App. Oct. 26, 2006), did not even involve the question of whether the school owed a duty to have an AED.  Instead, this case involved the question of whether the school was grossly negligent and acted with deliberate indifference to a student when, among other things, the school employees failed to call 911, failed to perform CPR, failed to use an on-premises defibrillator, and even went so far as to affirmatively discourage others from calling 911 for a student who collapsed.  2006 WL 3040137 at *1.  To the contrary, here, there is no dispute that Hotel

---

[7]  The materials Plaintiff submits about this case make clear that additional questions, such as whether the Hotel employees interfered with or delayed the emergency rescue efforts as to the decedent, were presented in the case. (<u>See</u> <u>e.g.</u>, Ex. M, Mem. of Points and Authorities in Support of Mot. for Summary Judgment, at 41-44.)  Such issues are not present here.

employees called 911, immediately responded to Mr. Waters' room, and performed CPR on him until FEMS personnel arrived. (Comp. ¶¶ 20-21.) No more was required. Similarly, Madison v. Ernest N. Morial Convention Center-New Orleans, 834 So.2d 578 (La. App. 2002), is distinguishable because, as Plaintiff herself characterizes it, the case involved "a nurse who failed to bring a defibrillator to treat a heart attack victim in a convention center." (Pl. Opp. at 8.)[8]

Plaintiff's other authorities are even more suspect because they do not involve written opinions, but instead reference summary judgment motions and one-line orders denying those motions. (See e.g., Exhs. I, J & K to Hagin Decl.) Of course, there are any number of reasons why a particular summary judgment motion may be denied and these unreported opinions from other jurisdictions have no precedential value in this Court.[9] As the materials submitted by Plaintiff herself concerning these unreported cases reflect, the cases involved issues beyond the central issue here: Whether an innkeeper had a duty to provide an AED in June 2005 in the District of Columbia. (See e.g., Ex. J, Pl. Opp. to Mot. for Summary Judgment, in Eng v. 24 Hour Fitness USA, Inc., at 9 (alleging that employees of fitness center failed to perform CPR or in any way attend to plaintiff before paramedics arrived).

### B. **Plaintiff Fails in Her Attempt to Distinguish the Cases Defendants Cited.**

Plaintiff fails to distinguish the well-reasoned cases from other jurisdictions that have addressed the specific issue of whether a business entity has a duty to provide an AED. Plaintiff

---

[8] Even Plaintiff must concede that it is a far different question to assess whether an entity has a duty to acquire a device than it is to assess the duty of an entity to properly use a device that it has already acquired.

[9] Plaintiff's assumptions and attempts to project her own reasoning onto the one-line orders is improper and certainly cannot be used as authority to support Plaintiff's claims here. See Hydrick v. Hunter, 466 F.3d 676, 2006 U.S. App. LEXIS 24458, at *12-14 (9th Cir. 2006) (refusing to accept argument that a particular issue was "law of the case" where court's orders consisted of single line entries and noting "[e]ither motion could have been denied for any number of procedural or technical reasons unrelated to the substance of the motions"); Blind-Doan v. Sanders, 291 F.3d 1079, 1083 (9th Cir. 2002) (court's "one-line order of exclusion is not 'a clear record' of why it decided as it did").)

claims that Defendants "rely[] on arguments [that were] rejected long ago, and on cases that pre-date widespread use of AEDs." (Pl. Opp. at 2-3.) Plaintiff also claims that the cases should be disregarded because they "were decided based on an incomplete record or analysis." (Pl. Opp. at 9.) Plaintiff is wrong.

First, Plaintiff attempts to characterize Defendants' cases as somehow outdated or superseded by "the most recent" cases. (Pl. Opp. at 7.) To the contrary, the authorities on which Defendants rely are relatively recent and, importantly, they were decided *after* Plaintiff claims that the use of AEDs became "widespread."[10] (Pl. Opp. at 2-3.) For example, Plaintiff's expert, Dr. Cummins -- a Seattle professor of emergency medicine -- asserts that the use of AEDs became the "national standard" in 2000 (Cummins Decl. ¶ 12, attached to Comp. as Ex. A), however, Atcovitz, 812 A.2d at 1220, and Salte v. YMCA of Metro. Chi. Foundation, 814 N.E.2d 610, 615 (Ill. App. 2004), both of which found no duty to provide an AED, were decided in 2002 and 2004, respectively.

Second, the reasoning behind these cases has not been rejected or overruled. Indeed, courts have reaffirmed -- as recently as April 2006 -- that § 314A of the Restatement (Second) Torts[11] does not require a hotel to provide all medical care which it could reasonably foresee

---

[10] Plaintiff's "national standard" is neither the subject of admissible evidence by an expert in the hospitality industry nor is it supported by post-2000 court decisions on comparable motions to dismiss. Notably, Plaintiff did not even address Defendants' argument as to why Dr. Cummins' opinions are inadmissible. (See Defs. Mot. at 10-12.)

[11] In her Second Amended Complaint, Plaintiff expressly relies upon Restatement (Second) Torts § 314A(1). Comp. ¶ 8.) Plaintiff now argues that the *proposed* revisions to §314A should be used as the standard in this case. (Pl. Opp. at 6.) There is no basis upon which to apply *proposed* revisions that have not yet been adopted and which were plainly not the standard when this incident took place in 2005. Furthermore, Plaintiff's reliance on the Reporters' Note cmt. A to the proposed revision, which references Stone v. Frontier Airlines, Inc., 256 F. Supp. 2d 28 (D. Mass. 2002), is irrelevant. The only issue presented in Stone was whether federal aviation law preempted a state law claim for negligence against the airline. The court did not address, let alone rule on the issue of whether the airline had a duty to provide an AED. (An air carrier at 50,000 feet could be subject to a different duty than a hotel in a major metropolitan area, but that too is a matter for federal and state legislatures.)

might be needed by a patron, but instead requires only that hotels provide "reasonable first aid"[12] until ill guests can be cared for by professional medical responders.[13]  Pacello v. Wyndham Int'l, Inc., No. CV0304770148, 2006 Conn. Super. LEXIS 1042, at *6-8 (Conn. Super. Ct. Apr. 7, 2006); see also Salte, 814 N.E.2d at 615; Atcovitz, 812 A.2d at 1220.  "[T]he standard of care required by the [§314A] duty . . . requires only that the defendant engage in minimal affirmative action."  Pacello, 2006 Conn. Super. LEXIS 1042, at *9-10.  This duty may be satisfied merely by "call[ing] for help and mov[ing] the patron to a place where assistance [can] be provided."  Id.  Plaintiff did not even address the Pacello case, let alone attempt to distinguish it.[14]

Third, Plaintiff's conjecture is that cases on which Defendants rely were decided on an "incomplete record or analysis."  (Pl. Opp. at 9.)  However, like the present case, Salte was decided on a motion to dismiss.  814 N.E.2d at 612, 615.  The court properly decided, as a matter of law, and before any discovery, that the health club at which decedent suffered a cardiac arrest simply did not have a duty to provide an AED.  Id. at 615.  Neither Salte nor any of the other cases Defendants cite was overturned on appeal.

Finally, Plaintiff attempts to distinguish Atcovitz "because the ruling in fact is based on a Pennsylvania statue that regulated AEDs, and arguably would have ***prohibited*** club employees from using an AED."  (Pl. Opp. at 11 (emphasis in original).)  What Plaintiff fails to note is that, although the trial court initially entered summary judgment for the health club on the grounds

---

[12]  As Defendants made clear in their opening brief, the December 2005 American Red Cross and American Heart Association Guidelines for First Aid, upon which at least one court has relied in determining the scope of a hotel's duty under §314A, define first aid "as assessments and interventions that can be performed by a bystander (or by the victim) *with minimal or no medical equipment*."  Nowhere in the Guidelines' discussion of "first aid" is the use of an AED even mentioned.  (See Mot. at 9.)

[13]  Plaintiff further claims that § 314A "establishes the ***minimum*** standard of care for hotels and other places of accommodation."  (Pl. Opp. at 6 (emphasis in the original).)  This statement, too, is made without citing any authority, and Defendants are not aware of any cases that could support this notion.

[14]  Plaintiff's intimation that the Salte case was somehow overruled by Marshall v. Burger King, 222 Ill. 2d 422 (2006) is incorrect.  (Pl. Opp. at 10.)  Marshall did not involve the question of whether a business entity has a duty to have an AED or in any way even address the Salte decision.  Marshall is only relevant to the extent it reaffirms that "whether a duty exists is a question of law for the court to decide."  222 Ill. 2d at 430.

that the Pennsylvania EMS Act legally prohibited the health club employees from using an AED, this portion of the ruling was reversed on appeal to the Superior Court. 812 A.2d at 1220-21. The Supreme Court of Pennsylvania considered the EMS Act, but only to the extent that it demonstrated the "acquisition, maintenance, and use of an AED, along with AED training requirements, are highly regulated." Id. at 1223-24.

In sum, Plaintiff has completely failed to point to any authority upon which this Court can or should find that Defendants had a duty under the common law to have an AED on premises at the time of Mr. Waters' death. Indeed, authorities Plaintiff cites actually serve to support Defendants' argument. See, e.g., 9/25/05 Order in Cohen v. Hilton Hotels Corp., Case No. GIC 821664, attached to Hagin Decl. as Exh. M.

### C. Plaintiff's Other Arguments Do Not Support A Finding That Defendants Had a Duty to Have an AED.

Plaintiff does not dispute that the deployment and use of AEDs is highly regulated. Nor does Plaintiff dispute that although the District -- like all state legislatures in the country and Congress -- has enacted legislation governing the use of AEDs, no statute specifically requires hotels in the District of Columbia to provide AEDs. Instead, Plaintiff attempts to use the fact that D.C.'s AED statute provides Good Samaritan immunity for someone who uses an AED to argue that the statute actually creates a duty for hotels to deploy them. Similarly, Plaintiff asks this Court to act as a "super legislature" and, in essence, retroactively implement B16-0043, the "Installation of Automated External Defibrillators Amendment Act of 2005," although that bill, by Plaintiff's own account, was "set aside for further study and hearings." (Pl. Opp. at 14.) Neither of these arguments is persuasive.

First, the mere provision of Good Samaritan immunity for one who uses an AED cannot be used to infer that a hotel has a duty to provide an AED. (Pl. Opp. at 13.) Not surprisingly,

Plaintiff does not cite any authority for this proposition. To the contrary, this very argument has already been rejected in one of the relatively few reported opinions concerning AEDs. As the court held in Atcovitz, "[t]he existence of a civil immunity provision for Good Samaritans who use an AED in an emergency situation cannot impose a duty on a business establishment to acquire, maintain, and use such a device on its premises." 812 A.2d at 1224. Plaintiff has not offered any reason why this Court should reach a different conclusion.

Second, Plaintiff's argument is undermined by the fact that the D.C. Council considered (but did not enact) B-16-0043 (i.e., legislation that would have specifically required large D.C. hotels to have an AED on premises). This immutable fact makes clear that the Good Samaritan provision of the AED statute adopted in 2001 did not confer a duty on the Hotel to have an AED as of June 26, 2005.

Third, Plaintiff's entire argument about the failure of the D.C. City Council to enact B16-0043 illustrates that Plaintiff is asking this Court to act as a "super legislature" in contravention of well settled authority in the District (and throughout the country). (See Defs. Mot. at 5-8.) Again, Plaintiff concedes that B16-0043 was set aside by the D.C. Council "for further study and hearings." (Pl. Opp. at 14.)[15] This Court should not now usurp the Council's authority and circumvent the legislative process, including public hearings, testimony, and submissions from various interested parties to carefully study AED issues before potentially imposing AED-related obligations on businesses, including hotels, in the District. Plaintiff offers no plausible rationale

---

[15] Plaintiff poses the question:

> [I]magine the legal chaos that would ensue if, after every legislative session of the D.C. Council . . . any legislation which did not pass, or in the case of B16-0043, was set aside for further study and hearings, could then be construed to provide legal immunities, rights and obligations. But, that is precisely what defendants seek.

(Pl. Opp. at 14.) To the contrary, it is Plaintiff's suggested approach which would risk far more "legal chaos" inasmuch as Plaintiff would have the Court treat B16-0043 as having been passed when presented in early 2005, rather than having been tabled for further study and hearings as was actually the case.

as to why this Court sitting in diversity is in a better position than the D.C. Council to consider and reconcile competing interests in this area.[16]  For this reason, District of Columbia courts have routinely rejected comparable requests by litigants.  Wadley v. Aspillaga, 163 F. Supp. 2d 1, 6 (D.D.C. 2001) (refusing to impose liability on social hosts for injuries caused by intoxicated guests in the absence of legislation imposing such a duty, and stating, "If the District of Columbia wishes to impose liability on social hosts, the City Council or Congress may enact a law imposing this type of liability.  However, absent any legislative guidance, social hosts in the District of Columbia are not liable for injuries caused by intoxicated guests"); Cook v. Babbitt, 819 F. Supp. 1, 12 (D.D.C. 1993)("[c]ourts do not sit as super legislatures to judge the wisdom of policy. The constitutional framework gives the elected branches wide latitude to formulate policy, and necessarily tolerates even improvident exercises of that discretion"); Gay Rights Coalition Of Georgetown University Law Center v. Georgetown University, 536 A.2d 1, 41 (D.C. App. 1987) (refusing to act as "super-legislature" to second-guess D.C. Council's enactment of Human Rights Act and its implications for groups' attempt to gain university recognition); accord Carbonell v. Acrish, 154 F. Supp. 2d 552, 562 (S.D.N.Y. 2001) (quoting Heller v. Doe, 509 U.S. 312, 319 (1993) and New Orleans v. Dukes, 427 U.S. 297, 303 (1976)) ("[t]he Supreme Court has counseled that the judiciary should not act as a 'super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines'").[17]

---

[16] It is worth noting that much of Plaintiff's Opposition and accompanying declaration and exhibits thereto read like one petitioning the D.C Council or Congress.

[17] Plaintiff dedicates over a page of her Opposition challenging Defendants' reference in one footnote to the maxim of statutory interpretation *expression unius est exclusion alterius*.  (Compare Defs. Mot. at 7, n.3 with Pl. Opp. at 13.)  Nowhere in the Plaintiff's discussion does she point to any facts about the legislative history behind the D.C. AED statute that would render this maxim inapplicable here.

Simply put, there is no reason why this federal trial court, considering an issue of first impression for District of Columbia courts, should permit the *de facto* imposition of AED requirements on hotels in the District through this legislation when the D.C. Council has not chosen to do so even though it was presented with the opportunity in early 2005 via B16-0043. Wadley v. Int'l Telcoms. Satellite Org., 82 Fed. Appx. 227, 228 (D.C. Cir. 2003) ("'federal courts, sitting in diversity, are obligated to apply, not to amend, existing state law'") (quoting Tidler v. Eli Lilly & Co., 851 F.2d 418, 426 (D.C. Cir. 1988)); accord Burris Chem., Inc. v. USX Corp., 10 F.3d 243, 247 (4th Cir. 1999) ("federal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion").

### III. THE COURT SHOULD DISREGARD THE DECLARATION OF LESLIE J. HAGIN

Before the Court is a pure legal issue: Did Defendants have a duty to provide an AED at the Hotel on July 25, 2006? There is no need to consider facts outside of the pleadings to resolve this issue. Accordingly, Defendants did not attach any materials outside of the pleadings to their Rule 12(b)(6) Motion. In a footnote, Defendants quoted from a letter sent by Plaintiff's counsel to the D.C. Government (Defs. Memo at 3, n.2) in which her counsel asserted that the District, not Defendants, were responsible for Mr. Waters' death. Defendants submitted no exhibits with their Rule 12(b)(6) motion. By contrast, Plaintiff submitted the declaration of her attorney, Leslie J. Hagin, attaching approximately 500 pages of extraneous materials. Seeking to justify this submission, Plaintiff mischaracterizes Defendants' Motion as "effectively . . . a summary judgment motion," because Defendants "cited materials outside the pleadings" (i.e., the footnote quoting a portion of Plaintiff's attorney's letter to the District through which Plaintiff asserted that FEMS's slow response to the 911 call from the Hotel was the proximate cause of Mr. Waters' death). (Pl. Opp. at 4 & n. 5.) Plaintiff is mistaken; Defendants' Motion is not

converted to a Rule 56 motion for summary judgment simply because there is one footnote reference to a letter of counsel. Because the Court can resolve the Motion without relying on any matters outside of the pleadings, there is no reason for this Court to convert Defendants' Motion to a Rule 56 motion. Savage v. Scales, 310 F. Supp. 2d 122 (D.D.C. 2004) (conversion does not take place merely because materials are referred to, but is "dependent on whether the court actually took cognizance of the materials submitted"); Krooth & Altman v. North Am. Life Assur. Co., 134 F. Supp. 2d 96, n.2, 99 (D.D.C. 2001) (declining to convert motion to dismiss to summary judgment motion because court did not rely on documents "to make its legal determinations about ERISA preemption and legal sufficiency of the claims"). Nor can Defendants' Motion be converted by Plaintiff's unilateral submission of extraneous materials in support of her Opposition. Wadley v. Aspillaga, 163 F. Supp. 2d 1, n.2 (D.D.C. 2001)(declining plaintiff's unilateral attempt to convert defendant's motion to dismiss to a motion for summary judgment). Accordingly, the Hagin Declaration and Plaintiff's invitation to treat this as a motion for summary judgment should be disregarded, if the declaration is not stricken altogether.[18]

The Hagin declaration should also be disregarded because it contains inadmissible statements and improper legal argument. See Richardson v. Oldham, 12 F.3d 1373, 1378 (5th Cir. 1994) (affidavits held inadmissible because they did not present evidence which would be admissible at trial). For example, in paragraphs 3 and 5, Attorney Hagin appears to reference statements allegedly made by a legal assistant in Marriott's Legal Department (not the Marriott Claims Department as stated by Plaintiff's counsel) with whom Attorney Hagin communicated directly concerning service of process issues. Any statements allegedly made by the Marriott paralegal are neither admissible nor binding upon Defendants. See Fed.R.Evid. 408; Bower v.

---

[18] In the unlikely event the Court were to convert Defendants' Rule 12 motion to a Rule 56 one, Defendants should then be afforded an opportunity to submit additional materials to the Court. (See Fed.R.Civ.P. 12(b)(6).)

Stein Eriksen Lodge Owners Ass'n., 201 F. Supp. 2d 1134, 1139-40 (D. Utah 2002) (striking declaration that contained information conveyed during settlement negotiations as inadmissible under Rule 408); Mozaffarian v. Breitling U.S.A., No. C94-1133 SI, 1998 U.S. Dist. LEXIS 19124, at *18-19 (N.D. Cal. Nov. 19, 1998) (striking declaration that contained information conveyed during settlement negotiations as inadmissible under Rule 408).  Furthermore, the Declaration contains numerous legal arguments, which are not properly the subject of a Declaration ostensibly presenting factual information.  See, e.g., Hagin Decl. ¶¶ 3-4, 6; see also Nobel Ins. Co. v. Hudson Iron Works, Inc., 111 F. Supp. 2d 373, 375 n. 2 (S.D.N.Y. 2000) (disregarding affidavit of counsel that contained extensive legal argument).

    Finally, to the extent that Attorney Hagin seeks to serve as a fact witness in this case concerning purported "admissions" made by a Marriott Legal Department non-lawyer employee who was not present at the Renaissance Hotel on the evening of June 26, 2005 (see e.g., Hagin Decl. ¶¶ 3, 5), Defendants reserve the right to move to disqualify the McNaul Ebel Nawrott Helgren & Vance law firm.  See District of Columbia Rule of Professional Conduct 3.7 ("[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" except in certain unique situations not present here).  The prospect of such a motion is yet another reason why the Hagin Declaration should be disregarded or stricken.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

                                        Respectfully submitted,

                                        _____
                                        David W. Goewey (D.C. Bar No. 414257)
                                        Danielle R. Foley (D.C. Bar No. 464482)
                                        VENABLE LLP
                                        575 7th Street, N.W.
                                        Washington, D.C. 20004
                                        Telephone: (202) 344-4583
                                        Facsimile: (202) 344-8300

                                        *Counsel for Defendants*
                                        *Marriott International, Inc. and*
                                        *Renaissance Hotel Operating Company*

Date: December 11, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of December 2006, a true and complete copy of the foregoing *Reply in Support of Motion to Dismiss of Defendants Marriott International, Inc. and Renaissance Hotel Operating Company* was served by the Court's ECF filing system on the following:

>Richard F. Silber, Esquire
>SPARKS & SILBER, LLP
>3221 M Street, N.W.
>Washington, D.C. 20007
>
>*Counsel for Plaintiff*
>
>Leslie J. Hagin, Esquire
>Michael D. Helgren, Esquire
>MCNAUL EBEL NAWROT & HELGREN, PLLC
>600 University Street
>Suite 2700
>Seattle, WA 98101
>
>*Counsel for Plaintiff*

_____
Teresa E. Huguley